## AMERICAN MEDICINAL SPIRITS CO. v. UNITED DISTILLERS, LIMITED, et al.

### No. 291.

Circuit Court of Appeals, Second Circuit.

March 11, 1935.

Kaufman, Weitzner & Celler, of New York City (Emil Weitzner, Samuel H. Kaufman, and Eugene M. Parter, all of New York City, of counsel), for appellants.

Breed, Abbott & Morgan, of New York City (Hugh S. Williamson and Gerald J.

Craugh, both of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

### L. HAND, Circuit Judge.

This is an appeal from a decree pendente lite enjoining the defendants from using the words, "Bourbon de Luxe," as a name for their whisky. The plaintiff, a subsidiary of the National Distillers Products Company, is the successor of R. W. Wathen & Company, a Kentucky corporation, which was in turn the successor of Louis B. Eppstein, the executor of Milton L. Eppstein, who did business at Fort Worth, Texas. For some time before November 21, 1911—how long does not appear—Milton Eppstein had sold bourbon whisky under the name, "Bourbon de Luxe," and on that day he registered the label in the Patent Office as a "print" (section 63, title 17, U. S. C. [17 USCA § 63]). Thereafter he or his executor continued its use until March 26th, 1926, limiting it to medicinal whisky after the advent of the Eighteenth Amendment. On that day Louis B. Eppstein, as executor, sold the label and good will of the business to Wathen & Company. (As the plaintiff's title is unchallenged, we pass the obvious objection that it does not appear whether the business was sold along with the mark and the good will.) Wathen & Co. continued to sell whisky as "Bourbon de Luxe," until March 20, 1934, when it sold the label and good will to the plaintiff; again the allegations and proof appear to be insufficient, but no point is made of it. The plaintiff also continued the name, so that there has been a continuous user for twenty-three years, though how extensive does not appear, except that thirty thousand cases have been sold since 1927.

■ One defendant, Leonard Gordon Importation Co., is a New York corporation, which acts as importer for the other, United Distillers, Ltd., a Canadian company, incorporated in British Columbia in 1924. In 1929, this defendant adopted and registered in Canada, "Bourbon de Luxe," as a trademark for its best bourbon whisky. It did not and could not import any of this into the United States until after the repeal of the Eighteenth Amendment, but then it began to do so, putting the bottles in cartons which were Chinese copies of the plaintiff's cartons, both in text and in script. It is unnecessary to elaborate this feature of the case; even the defendants disclaim the right to continue, though they somewhat feebly protest that the bottles may go to the trade unwrapped. The fraud was patent and brazen, as appears from a moment's inspection. The judge enjoined it, as he was obviously bound to do, and the only question is whether he was wrong in going further and including the label as well. As to this the defendants argue that it is purely descriptive, and therefore not susceptible of monopoly. So far they are right; "bourbon" has for long been the name for whisky made for the most part, though not wholly, from corn; "de luxe" has become a naturalized English word; both appear in the Oxford Dictionary. But the plaintiff and its predecessors have used the mark for twenty-three years, and presumably to some buyers at least, it has come to signify more than a bourbon whisky of high quality. New England Awl & Needle Co. v. Marlborough Awl & Needle Co., 168 Mass. 154, 156, 46 S. Ct. 386, 60 Am. St. Rep. 377. Upon final hearing this being in some dispute may indeed turn out to be untrue; we do not hold that on this record a final injunction should go; but in spite of these doubts we believe that, contrary to the usual rule, an injunction, pendente lite, was proper.

■ In cases of secondary user generally the buyers are of two classes, those who read the mark descriptively, and those who know it also as a sign of the source of the goods; the plaintiff is concerned only with the second. In the case at bar, not only is there some antecedent reason to suppose that there are such buyers; but, judged by its conduct, the defendant supposed so too. Possibly it would not have attempted to beguile these through the use of the mark alone, but at least it found it desirable to add the mark to the carton and must have believed that it would help in the result. For our present purpose we may take that belief at its face. My-T Fine Corporation v. Samuels, 69 F.(2d) 76 (C. C. A. 2). These two considerations, the length of the user and the fraud, are enough evidence of secondary meaning to support an injunction. We need have no scruple as to the defendant's privilege to use the descriptive words of the mark as it did. As in cases of defamation a privilege ceases when not used for the purposes that it is given to fulfill. The defendant was not trying to describe its goods at all; it was trying to prey upon the plaintiff's business. That

may not in the end be enough to forfeit the privilege forever, but there is surely no injustice in forbidding absolutely until the trial what was never used honestly in the United States at all.

Finally the consequences of an injunction are much less serious to the defendants than of its denial to the plaintiff. It will not touch the use of the name in Canada; the use in this country was under protest after March 10, 1934, three months after it became lawful to sell whisky at all. During those three months no extensive trade could have been gained; anything gained thereafter was at the hazard of the validity of the mark. It cannot be a serious matter for the defendant to await final decree before beginning such a business. On the other hand continual user meanwhile may be most damaging to the plaintiff. It would be desirable if the District Court could see its way to hear the cause out of its order.

Order affirmed.

SWAN, Circuit Judge, took no part in the decision of this case.