**KITCHENS OF SARA LEE, INC.,**
Plaintiff-Appellee,

v.

**NIFTY FOODS CORPORATION, Lady Ilene, Inc., A. Lustig, Inc., Lustig Food Corporation, Abraham Lustig and Ilene Lustig, Defendants-Appellants.**

No. 112, Docket 25072.

United States Court of Appeals
Second Circuit.

Argued Jan. 7, 1959.

Decided May 7, 1959.

Beverly W. Pattishall, Chicago, Ill. (W. Thomas Hofstetter, Woodson, Pattishall & Garner, Chicago Ill., Charles Shepard, Rochester, N. Y., on the brief), for plaintiff-appellee.

John Schulman, New York City (Leo F. Simpson, Jr., Rochester, N. Y., Solomon A. Klein, M. William Krasilovsky, New York City, on the brief), for defendants-appellants.

Before CLARK, Chief Judge, MOORE, Circuit Judge, and GIBSON, District Judge.

MOORE, Circuit Judge.

Plaintiff and defendants both bake and sell to the public such familiar bakery products as chocolate cake, cream cheese cake, pound cake and coffee cake. In keeping with popular trend these cakes are sold in a frozen condition. The housewife need do no more to prepare them for service than to remove them from the refrigerator and let them thaw out. Claiming that defendants have violated plaintiff's rights in four distinct fields of law, i. e., (1) copyright infringement; (2) unfair competition; (3) trademark infringement; and (4) unjust enrichment, plaintiff sued. The district court, after trial without a jury, made many findings of fact and concluded, and adjudged as well, that defendants were guilty of copyright infringement, unfair competition and violation of section 368–c, subd. 3 of the New York General Business Law. The court dismissed the claims of trademark infringement and unjust enrichment.

The court found that there had been no proof that defendants' use of their labels resulted in any damage to plaintiff or gains and advantages to defendants from the infringement of plaintiff's copyrights but awarded statutory damages of $12,500, attorney's fees of $10,-000 and costs of $1,240.57. In addition the court enjoined defendants from selling bakery products under labels simulating plaintiff's designs and make-up and from using labels, make-up, slogans or designs "which tend to dilute the distinctive quality of plaintiff's copyright labels." Destruction of defendants' labels, plates and molds was also directed. From this judgment defendants appeal.

In this day and age of intensive advertising, both audio and visual, all calculated to din upon the senses of the purchasing public the particular merit of a particular brand so that the prospective purchaser will seek or demand a trade-name product, the problems involved in this case have become of some importance to the commercial world. No longer is Little Jack Horner permitted to reach in and pull out an ordinary plum. At the risk of freezing his finger tips he must search the giant refrigerators of a giant supermarket until he finds a package of "XYZ Tasty-Sweet, Tree Ripened, Sun Kissed, Sugar Plums." On the outside of the package the purchaser will usually find a picture of a plum looking very much like the fruit Nature intended it to be when raised under the tender care of a professional fruit grower. If the same purchaser has need of a broader diet than the plum, he will find temptingly beckoning to him from rows of shelves, every known kind of fruit and vegetable in cans which with a high degree of accuracy depict the contents by colorful labels. There may be over a dozen brands of each commodity and yet, not too surprisingly, beets, ears of corn and even the humble carrot all seem to have quite a similar resemblance to their forebears, the seed packets, whose labels gave similar representations of their future possibilities if they should lead good lives and not be contaminated by a blight.

Having allowed realism to creep into the picture and this being the state of modern merchandising, what can be done to protect plaintiff here against the onslaught of predatory competitors and equally to protect defendants from an unwarranted monopoly and a plaintiff which fain would say "Let them eat cake, but only 'Sara Lee,' " and the public which ought at least to have a few varieties to choose from lest its taste buds atrophy?

In 1955 plaintiff's predecessor caused to be registered in the Copyright Office a series of labels for its fresh and frozen bakery products, namely, cream cheese cake, pound cake, chocolate cake and coffee cake. The cakes were packaged in aluminum foil pans of various sizes and shapes, round, rectangular and octagonal, all acquired from a well-known manufacturer of such pans, which were available

to the public and as to which plaintiff had no monopoly.

The cakes were covered with cardboard labels. All except the coffee cake were solid cardboard; the coffee cake had a cardboard rim and a large cellophane window in the center.

Plaintiff's and defendants' chocolate, cheese and pound cakes apart from similarity in shape had three markedly distinguishing features. Plaintiff's labels were bright red with its brand name "Sara Lee" in bold white letters. Between "Sara" and "Lee" was a small drawing probably intended to represent a colonial dame. Together with the color and the name the most conspicuous feature of the labels was a picture of a large piece of cake with the superfluous words "chocolate cake," "cream cheese cake," or "all butter pound cake." The piece of cake rested upon a plate on which was a dessert fork. Defendants' labels in contrast were white. Its brand name "Lady Ilene" was displayed in large red letters and between the words and against a yellow background was a rather large drawing of the face of an attractive woman wearing a crown. The center of the label was a medium light blue. The words "chocolate cake," "cream cheese cake," and "all butter pound cake" were also used. The pictures of the products are almost identical. Visual inspection plus the testimony and exhibits more than justify the district court's conclusion that the drawings or pictures of the chocolate cake, cheese cake and pound cake were copied from plaintiff's labels. The coffee cake label had no picture to copy. The balance of the material on all the labels of plaintiff and defendants consisted of fairly standard instructions on how to serve, the ingredients, the weight, the license number of the State of Connecticut and a registration notice of the State of Pennsylvania.

■ Against this factual background, what are the legal rights of the parties? Under the law of copyrights upon compliance with its requirements any person shall have the exclusive right to print and vend the copyrighted work which may include "Prints and pictorial illustrations including prints or labels used for articles of merchandise" (17 U.S.C.A. §§ 1, 5(k)). The Copyright Office in defining a "Commercial Print or Label" specifically provides for copyright in "prints and labels published in connection with the sale or advertisement of articles of merchandise" (17 U.S.C.A. § 6). Not every commercial label is copyrightable; it must contain "an appreciable amount of original text or pictorial material." "Brand names, trade names, slogans, and other short phrases or expressions cannot be copyrighted, even if they are distinctively arranged or printed." The Copyright Office does not regard as sufficient to warrant copyright registration "familiar symbols or designs, mere variations of typographic ornamentation, lettering or coloring, and mere listings of ingredients or contents." Although the publication of these views (Copyright Office Publication, No. 46, Sept. 1958) does not have the force of statute, it is a fair summary of the law.

■ Accepting the sufficiently established fact of copying the pictures of the cakes, do these pieces of cake possess "some substantial, not merely trivial, originality" (Chamberlin v. Uris Sales Corporation, 2 Cir., 1945, 150 F.2d 512, 513) so as to be copyrightable? Plaintiff's artists and lithographers have achieved most realistic pictures of cakes which resemble all well-baked cakes of similar type including those baked by fondly remembered grandmothers. A fanciful, imaginary or unique representation of such standard commodities might well not serve its desired purpose to attract the American appetite. Paraphrasing Judge Yankwich in Brooks Bros. v. Brooks Clothing of California, D.C.Cal. 60 F.Supp. 442, 456, affirmed on opinion below, 9 Cir., 1947, 158 F.2d 798, that "A double-breasted suit is a double-breasted suit. Styles may change, but a double-breasted suit remains just about the same," it might be said that a piece of chocolate frosted chocolate cake looks about the same throughout the generations.

Nevertheless, despite the force of arguments questioning the copyrightability of pictures of these homely and domestic articles of food, such obvious copying as here occurred is not to be encouraged. Plaintiff has put time, some creative thought and money into its pictorial representations of its cakes and for the copying it is entitled to damages. Rushton Co. v. Vitale, 2 Cir., 1955, 218 F.2d 434; Alfred Bell & Co. v. Catalda Fine Arts, 2 Cir., 1951, 191 F.2d 99.

■ Copying, however, cannot be extended to the entire cake cover. Plaintiff recognizes this principle, saying (Appellee's Brief p. 39): "Of course, plaintiff can have no monopoly in words as such, nor can it claim any exclusive right in cellophane windows, pictures of cakes, colors, type styles, circular and rectangular shapes, positions of the various elements, pictures of Wedgwood style plates and heavily ornamented silverware, or scalloped border designs, as such." Escape from this statement is not found in its argument that the combination may be protected because, if not, "a Leonardo painting would not comprise a protectable creation because, after all, it consists merely of various shades and colors rendered by means of pigments and oils, all of which may be freely employed by anyone" (Id. p. 39). The example is not apt. While paints, colors and subject matter, even as the words of the English language, are in the public domain, when an author composes a poem of words or an artist uses paints to illustrate a subject, the resulting creation, if original, may usually be protected by copyright. This does not mean that to the picture there can be added ordinary serving directions, ingredients and license numbers so as to give copyrightable qualities to these words or to the shapes of the containers. The pictures of the cakes used by plaintiff on its labels although possibly not achieving the quality of a Leonardo "Still Life" nevertheless have sufficient commercial artistry to entitle them to protection against obvious copying (Griesedieck Western Brewery Co. v. Peoples Brewing Co., D.C.Minn., 1944, 56

F.Supp. 600, affirmed 8 Cir., 1945, 149 F.2d 1019). Therefore, plaintiff under the particular facts here involved may have relief as to the pictures but not as to the circular, rectangular or octagonal shapes or the serving directions or the ingredients. As to the colors, which are radically different, there was no copying.

*Unfair Competition*

■ On this issue the district court's findings, the testimony and visual inspection permit of only one conclusion. The names "Sara Lee" and "Lady Ilene" have no similarity. Had defendants adopted the name "Sarah Lou," the similarity would have been as striking as the dissimilarity here. The names were prominently displayed against completely different color backgrounds—white against a vivid red background for "Sara Lee"—red against a white background for "Lady Ilene." The drawings between the words bore no resemblance each to the other (Findings Nos. 33–36). The court found that "Defendants' labels do not simulate wholly or in part any statutory or common law trademark of the plaintiff" (Finding No. 37). The only similarity is found in the shapes of the pans, the types of cake and the pictures of the cake on the cover.

There is no proof from which even a remote inference can be drawn that defendants' labels are likely to cause customer confusion or that they would cause prospective customers to connect defendants' products with plaintiff's. Even were a customer to say "I thought all frozen cakes were 'Sara Lee' " this would not suffice because determinative conclusions of fact are not to be based upon such a level of perception. "Plaintiff readily concedes that neither the evidence it offered nor the labels themselves indicate that *confusion of goods* is likely to occur" (Appellee's Brief, p. 42) but claims confusion of source is likely. Such a far-fetched inference could only be based upon the assumption that frozen cakes had acquired a secondary meaning as originating with plaintiff. Of this there is no proof.

Plaintiff cites three cases in this circuit apparently for the propositions: (1) that if there be "intent to deceive" this will be sufficient in otherwise doubtful cases (My-T Fine Corporation v. Samuels, 2 Cir., 1934, 69 F.2d 76, 77); (2) that fraudulent copying is evidence of secondary meaning (American Medicinal Spirits Co. v. United Distillers, 2 Cir., 1935, 76 F.2d 124); and (3) that no evidence of actual confusion is required to secure an injunction (G. H. Mumm Champagne v. Eastern Wine Corp., 2 Cir., 1944, 142 F.2d 499). These cases illustrate the dangers of developing broad principles of law from specific fact situations. In My-T Fine the boxes containing the pudding mix were most similar in appearance. The label in American Medicinal Spirits Co. [76 F.2d 125] featured the same words "Bourbon de Luxe" as the plaintiff's labels so that a purchaser might think it to be the same product. In the Mumm case again it was the particular red-striped label, closely associated with the plaintiff's product, that was likely to cause confusion.

The New York General Business Law (sec. 368–c, subd. 3) provides that "Likelihood of injury to business reputation or of dilution of the distinctive quality of a trade name or trade-mark shall be a ground for injunctive relief in cases of trade-mark infringement or unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services." Here the underlying prerequisite, i. e., trade-mark infringement or unfair competition is lacking.

Since the trial court erred in its findings and conclusions of unfair competition and violation of New York General Business Law, and in holding plaintiff's copyrights infringed beyond the illustrations of the three cakes, it is appropriate to reassess the damages and attorney's fee awarded below.

The judgment is modified by deleting therefrom subparagraphs "(b)" and "(c)" and the last paragraph thereof. Since defendants did not infringe plaintiff's copyright in its coffee cake label, the injunctive provisions of the judgment, as modified herein, should not apply to defendants' coffee cake labels.

No award of attorney's fee or costs will be granted either party on this appeal. The case was complex and the appeal was brought in good faith. Overman v. Loesser, 9 Cir., 1953, 205 F.2d 521; Blair v. United States for Use and Benefit of Gregory-Hogan, 8 Cir., 1945, 150 F.2d 676.

The judgment is modified and the case remanded for reassessment of damages and attorney's fees in the light of this opinion.

That part of the judgment which failed to award attorney's fees and costs to defendants Ilene Lustig, A. Lustig, Inc. and Lustig Food Corporation, and from which those defendants appeal, is affirmed.