ALBERTO–CULVER COMPANY, Plaintiff-Appellant and Cross-Appellee,

v.

ANDREA DUMON, INC., Defendant-Appellee and Cross-Appellant.

Nos. 18892, 18893.

United States Court of Appeals, Seventh Circuit.

Argued April 5, 1972.

Decided Aug. 29, 1972.

Robert D. Silver, Melrose Park, Ill., Beverly W. Pattishall, Robert M. Newbury, Raymond I. Geraldson, Jr., Chicago, Ill., for plaintiff-appellant; Pattishall, McAuliffe & Hofstetter, Chicago, Ill., of counsel.

David Chaimovitz, Chicago, Ill., for defendant-appellee.

Before PELL, STEVENS and SPRECHER, Circuit Judges.

STEVENS, Circuit Judge.

Plaintiff's principal argument is that defendant's president gave false testimony at his deposition and therefore the district court should have ruled against the defendant on the merits even if plaintiff's claims were otherwise defec-

tive. Counts alleging trademark infringement, unfair competition, and dilution were dismissed at the close of plaintiff's case; at the end of the trial the district court sustained only a part of plaintiff's copyright claim. Counterclaims alleging monopolization of the market for feminine hygiene deodorants and abuse of process were dismissed as insufficient in law. Both parties have appealed. They raise about fourteen issues. On all issues except one, we affirm.

## I.

In 1966 plaintiff began to market a product which it describes as "a deodorant spray for feminine hygiene." As the text of its label explains, the spray "is made especially for the external vaginal area." Plaintiff's product was the first of this character to be marketed on a nationwide basis. It selected the initials "FDS" ("feminine deodorant spray") as the name of the product and created an original label. The label was copyrighted and the trademark "FDS" was registered. The product is widely advertised; its sales have steadily and impressively increased.

In 1967 defendant also decided to market a deodorant spray for feminine hygiene. Defendant's president decided to call it "Personal Spray." He employed an artist to design a container "to convey the same image and thought as the FDS can." The artist was given an FDS can so he would have a better idea of how to go about designing the Personal Spray can. He did design such a can, defendant marketed its product and, in due course, this litigation ensued.

A side-by-side comparison of the FDS can and the Personal Spray can reveals substantial differences between the two; they are comparable, however, in that the artwork on both clearly indicates— even without reading the fine print— that the product is intended to be used privately by women rather than by men. The fine print on both labels conveys the same basic image with minor variations.

■ Plaintiff does not question defendant's right to market a product of this kind or to use a label which will— without requiring the prospective purchaser to scrutinize the fine print—convey a message indicating generally what the product is supposed to accomplish. Plaintiff has no right to a monopoly of labels which convey the same general image and thought as the FDS can.

The district court's findings carefully and thoroughly analyzed the similarities and differences between the two containers. Eliminating the court's detailed discussion, we quote from those findings:

> "The major elements of the front of each label, i. e., size, color, shape of enclosed central background, contents of enclosed area, and border design, are distinct from each other when each element is considered separately. Further, the overall impression imparted by the front of one label is dissimilar to that imparted by the front of the other label.
>
> \* . \* \* \* \* \*
>
> "The colored art work at the top of the back of each label is dissimilar as to size, color, shape, contents, and label position."

The court concluded that the commercial aspects of plaintiff's label were copyrightable but that the part of the language containing directions for use was purely descriptive and therefore not copyrightable. On the subject of infringement, the court stated:

> "The test of copyright infringement is whether or not an unauthorized party has copied the copyright work of another. Blumcraft of Pittsburgh v. Newman Brothers, Inc., 373 F.2d 905, 906 (6th Cir. 1967); Austin v. Steiner, 207 F.Supp. 776, 779 (N.D. Ill.1962). Not only must the alleged infringer have had the opportunity to copy the protected design, the similarities between the two designs must be so substantial and obvious that there could be a finding of actual copying or appropriation. Prestige Fabrics,

Inc. v. Universal Mfg. Corp., 304 F. Supp. 903, 905 (S.D.N.Y.1969); Peter Pan Fabrics, Inc. v. Dan River Mills, Inc., 295 F.Supp. 1366, 1369 (S.D.N.Y.1969).

"There being no evidence as to any actual confusion resulting from the front of the Personal Spray label, no evidence indicating that ordinary lay observers find the FDS and Personal Spray labels similar, and this Court having found that the fronts of the two labels are dissimilar not only as to various elements of composition, but in overall appeal, we find that defendant has not copied the front of the FDS label. Regardless of defendant's access and intent, there was no copying and no infringement as to the front of the FDS label. Milworth Converting Corp. v. Slifka, 276 F.2d 443, 445 (2d Cir. 1960).

"As to the descriptive language on the back of the label, even if we found that the language was copyrightable, we would have found no infringement. Plaintiff has suggested that the label of another competing product, Massengill Feminine Hygiene Deodorant Spray, discloses a method of promoting a similar product without copying plaintiff's text. (Plaintiff's Post-Trial Brief RE: Copyright Infringement, at 8.) An examination of that label reveals that it invokes more of the language and images found on the FDS label including dryness, freshness, gentleness and psychological security than does the Personal Spray label. Thus, if the Massengill descriptive language was not improper, neither could the Personal Spray language have been found so.

"On the other hand, we find that the validly copyrighted phrase 'is the most personal sort of deodorant' appearing at the top of the back side of the FDS label was infringed by the first line of the first paragraph on the back of the Personal Spray label, which line states that Personal Spray is 'the deodorant of the most personal kind.' The language on both labels is so substantially similar that we find defendant copied that part of the FDS label. We take judicial notice that other similar products invoke the concept of personalness, but not in the same sense, nor in the same manner. For instance, Naturally Feminine talks of 'personal feminine hygiene' and Bidette Mist speaks of a 'very personal problem.' "

The court enjoined defendant from using the infringing phrase and awarded damages of $500 pursuant to 17 U.S.C. § 101(b).

## II.

Apart from plaintiff's argument that the false deposition testimony of defendant's president required a different result, it is quite clear that the record adequately supports the district court findings and conclusions relating to infringement.

Plaintiff seems to argue that defendant's intent to convey the same general image and thought is sufficient proof of copying, and that the district court erred in engrafting the additional requirements of "access" and "substantial similarity" onto a simple test of whether there was copying. Of course, the "access" requirement is of no particular import in this case, since there is no question that defendant had access to plaintiff's product. And we think a mere attempt to copy plaintiff's conception did not constitute "copying" if the attempt was so unsuccessful that there was either no substantial similarity or merely duplication of concepts in the public domain. Since plaintiff's basic idea for a specialized product was in the public domain, the fact that defendant's label expressed that idea did not constitute infringement.

As far as the trademark infringement and unfair competition is concerned, we agree with plaintiff that the absence of proof of actual confusion is not necessarily fatal to its case; that the side-by-side comparison would not necessarily be controlling if there were

other evidence of confusion; and that letter trademarks may be more easily confused than word trademarks. Nevertheless, we think the district court's findings adequately establish that the danger of confusion is sufficiently remote as not to amount to a "likelihood." Certainly the court's findings on the trademark claim are not clearly erroneous.

■■■ Plaintiff also argues that, in any event, the evidence established a likelihood of "dilution of the distinctive quality of the mark" within the meaning of the Illinois Trademark Statute, Ill. Rev.Stat., Ch. 140, § 22. That statute affords protection against use of a trade name by a non-competitor as well as by competitors. Polaroid Corp. v. Polaraid, Inc., 319 F.2d 830, 836–837 (7th Cir. 1963); Spangler Candy Co. v. Crystal Pure Candy Co., 235 F.Supp. 18, 23 (N. D.Ill.1954), affirmed, 353 F.2d 641 (7th Cir. 1966). Since plaintiff and defendant are competitors, there would be no need to rely on the dilution statute if there were a substantial similarity between the two labels or a "likelihood" of confusion. Conversely, without such similarity or likelihood, there is no greater right to relief under that provision than on traditional infringement grounds. Plaintiff's "dilution" argument is without merit.

### III.

In a pretrial deposition Bernard Malits, defendant's president, was asked about his meeting with the artist who designed the Personal Spray container. His version of that meeting differed in three material respects from the account of the meeting given in uncontradicted testimony by two witnesses at the trial. According to their testimony, (1) four people were at the meeting, (2) Malits gave an FDS can to the artist, and (3) requested him to prepare a label that would "convey the same image as" the FDS can.[1] According to Malits, (1) only he and the artist were present, (2) he did not give the artist an FDS can, and (3) the only instructions he gave the artist related to colors and the name "Personal Spray." Plaintiff persuasively argues that the Malits deposition testimony was false and we assume that it was.

Malits did not testify at the trial and defendant made no attempt to use his deposition affirmatively. Accordingly, the testimony of the other participants in the meeting was uncontradicted and the district court no doubt accepted it as true, as have we in our analysis of the issues. Plaintiff argues, however, that the district court should have made a finding that Malits gave false testimony; that such a finding would be the equivalent of an admission of guilt, and would raise a presumption that defendant intended to trade on plaintiff's goodwill, and therefore is guilty of infringement and unfair competition.

■■■ We think plaintiff misconceives the legal effect of such false testimony. Certainly, it justifies a total discrediting

---

1. "Q. Will you please tell us what took place at that meeting?

"A. . . . ., and he [Malits] presented to me a can of FDS and said he had a product he wanted to put on the market, which was to *convey the same image and thought* as the FDS can.

\* \* \* \* \*

"Q. What did he ask you to do?

"A. The label was to *carry the same image* as the FDS, for a feminine personal spray; it was to have *the air of femininity* with it so as not to be confused with deodorant used by any other person.

\* \* \* \* \*

"Q. I interpreted your answer to mean that you were to establish it as a family type deodorant, but my question is: were you asked to design something that was to imitate the specific can of FDS?

"A. Yes, it was to *convey the same message* as the FDS can.

\* \* \* \* \*

"Q. Was Mr. Varneas [sic] given any instructions with respect to the design of the PS label at this meeting?

\* \* \* \* \*

"A. All right, I think it was Bernard Mallets [sic] who told him that we wanted to *create the same image* that the FDS can had." (Emphasis added.)

of Malits' testimony; but no such testimony was offered by defendant or relied upon by the district court. It also made it entirely appropriate to credit the contrary testimony of the witnesses who did testify; but that has been done. Moreover, we may assume that defendant's consciousness of guilt evidences an intention to copy plaintiff's ideas; even so, the defendant has the right to prove that its efforts were futile, that it merely copied material in the public domain, or that notwithstanding its original intent, the end result of its efforts bears no substantial similarity to plaintiff's label. In short, although we certainly do not condone inaccurate testimony, whether given deliberately or merely because of a cavalier indifference to the diligence required of witnesses under oath, false deposition testimony does not remedy the defects in plaintiff's affirmative case.

### IV.

Plaintiff contends that all four paragraphs of the descriptive language on the back of its label were copyrightable.[2]

The district court correctly stated the applicable law, quoting from Kitchens of Sara Lee, Inc. v. Nifty Foods Corp., 266 F.2d 541, 544 (2d Cir. 1959):

"Not every commercial label is copyrightable; it must contain 'an appreciable amount of original text or pictorial material.' 'Brand names, trade names, slogans, and other short phrases or expressions cannot be copyrighted, even if they are distinctively arranged or printed.' The Copyright Office does not regard as sufficient to warrant copyright registration 'familiar symbols or designs, mere variations of typographic ornamentation, lettering or coloring, and mere listings of ingredients or contents.' "

The district court continued:

"Similarly, the textual part of a label generally requires different treatment than the pictorial aspects of the label. Where the text is merely descriptive matter that does not aid or augment the pictorial illustration, it is not subject to copyright. Bobrecker v. Denebeim, 28 F.Supp. 383, 384 (W. D.Mo.1939).

'The plaintiff therefore could not complain about the use of the same words, as these are purely textual, and neither could the plaintiff properly complain because the defendant used similar words in connection with similar pictorial illustrations. This was aptly covered in Higgins v. Keuffel, 140 U.S. 428, . . . 431 [11 S.Ct. 731, 35 L.Ed. 470], . . . where the Court said: "It cannot, therefore, be held by any reasonable argument that the protection of mere labels is within the purpose of the clause in question. *To be entitled to a copyright, the article must have by itself some value as a composition, at least to the extent of serving some purpose other than as a mere advertisement or designation of the subject to which it is attached.*" ' Id. at 384–385.

Cf. Kitchens of Sara Lee, Inc. v. Nifty Foods Corp., 266 F.2d 541, 545 (2d Cir. 1959); Laskowitz v. Marie Designer, Inc., 119 F.Supp. 541, 552 (S. D.Cal.1954).

"Consequently, the entire face side of the FDS package described in

2. The relevant paragraphs of the two labels are as follows:

| *Plaintiff's Text.* | *Defendant's Text.* |
|---|---|
| FDS is the most personal sort of deodorant. | Personal Spray, the deodorant of the most personal kind. This spray is used exclusively for the external vaginal region. |
| This unique spray is made expressly for the external vaginal area. | |
| FDS protection is dry, refreshing and gentle to delicate tissues. | Personal Spray should be used regularly to eliminate any and all odors. |
| Use FDS regularly to remove any fear of odor. | Personal Spray is refreshingly fresh all day long. |

Finding of Fact 9 was copyrightable and is valid. On the back side, the colored art work and the connecting phrase 'is the most personal sort of deodorant' was copyrightable and is valid. The remaining language on the back side is purely descriptive or deals with directions and cautions. As this language has no separate value as composition or an extension of the original art work, it was not copyrightable and is not valid. S. C. Johnson & Son, Inc. v. Drop Dead Co., 210 F.Supp. 816, 817 (S.D.Cal.1962), aff'd sub nom. Drop Dead Co. v. S. C. Johnson & Son, Inc., 326 F.2d 87, 92 (9th Cir. 1963)."

 We have agreed with the district court that although the label as a whole—as a pictorial composition—is copyrightable, there is no infringement.[3] We also agree that the last three paragraphs of the text are descriptive and not copyrightable and that even if they were, there would be no infringement.[4]

 In our judgment, however, the legal tests correctly enunciated by the court below lead to a conclusion that the phrase "most personal sort of deodorant" is not subject to copyright protection.

 First, to the extent that the phrase was connected with the artwork by different typography than the rest of the text, it is not protected because, as the quotation from *Sara Lee* indicates, mere distinctiveness in typographic ornamentation will not ordinarily qualify otherwise noncopyrightable material for copyright protection.[5]

Second, this portion of the text is merely a "short phrase or expression" which hardly qualifies as an "appreciable amount of original text."[6]

Third, and perhaps most important, this phrase is just as descriptive as the rest of the text. The ingenuity and creativity reflected in the development of the product itself does not give appropriate descriptive language, such as "personal sort of deodorant," any separate value as a composition or as an extension of a work of art. We conclude that this ordinary phrase is not subject to copyright protection.

## V.

 In its counterclaim, defendant alleges that plaintiff's action was brought in bad faith simply to impose the cost and burden of litigation on defendant and thereby to exclude it from the market for feminine hygiene deodorants. There is clearly sufficient merit to plaintiff's case to defeat a cause of action for abuse of process. See Barrett v. Baylor, 457 F.2d 119 (7th Cir. 1972). And as far as the Sherman Act contention is concerned, as the district court noted, defendant's counterclaim fails to allege any specific injury to its business or property by reason of plaintiff's conduct. Moreover, plaintiff's good faith effort to enforce its copyright and trademark is not the kind of exclusionary conduct condemned by § 2 of the Sherman Act. The counterclaim was properly dismissed.

The judgment of the district court finding infringement of a valid copyright with respect to the phrase "most personal sort of deodorant" is reversed; in all other respects the judgment is affirmed.

---

3. Plaintiff's strongest case was that the label copyright as a whole was infringed; this is essentially the posture in which the case went forward in the district court.

4. See the latter part of the earlier quotation from the district court's opinion.

5. Moreover, the typographic ornamentation was not infringed because defendant did not use distinctive type for that phrase.

6. See quotation from the *Sara Lee* case in the text, *supra*.