TIENSHAN, INC., Plaintiff,

v.

C.C.A. INTERNATIONAL (N.J.), INC., and C.C.A. International, Inc., Defendants.

No. 95 Civ. 3112 (SHS).

United States District Court, S.D. New York.

Aug. 18, 1995.

Robert Kunstadt, Robert Broder, Pennie & Edmonds, New York City, for plaintiff.

Mark I. Peroff, New York City, for defendant.

## OPINION AND ORDER

STEIN, District Judge:

The question for determination is whether the plaintiff has demonstrated possible irreparable injury and probable success on the merits with regard to defendants' alleged infringement of plaintiff's copyright in its "Kitchen Basics" box design, and is therefore entitled to a preliminary injunction. For the reasons that follow, this Court answers that question in the affirmative.

## FINDINGS OF FACT

*The Parties*

Plaintiff Tienshan, Inc. ("Tienshan") is in the business of designing, importing, and distributing home furnishings, including casual dinnerware. Defendants C.C.A. International (N.J.), Inc. and C.C.A. International, Inc. (collectively "C.C.A.") are also engaged in the business of distributing casual dinnerware.[1]

*Tienshan's "Kitchen Basics" Product and Box*

In late 1991 and early 1992, Tienshan designed a style of "banded" dinnerware—dinnerware that has a band of color encircling the rim—and named it "Kitchen Basics." Tr. at 15–16. Each set of Kitchen Basics dinnerware comprises four dinner plates, four salad/dessert plates, four bowls, and four mugs. In February 1992, Tienshan contracted with Ruth Tulino Designs ("Tulino") in Los Angeles to design a box for packaging of the Kitchen Basics product. Tr. at 17–18. Tienshan paid somewhat in excess of $6,000 for the design, which was created by using photographs of the dinnerware taken by Peter Hogg, an employee of Tulino. Tr. at 20.

Sales of Kitchen Basics dinnerware in the first quarter of 1995 were down from previous years, due to C.C.A.'s alleged infringement, according to John P. Braunschweig, president of Tienshan. Tr. at 31. Braunschweig conceded, however, that he had no way of knowing for certain the cause of the decline in sales. Tr. at 38.

*C.C.A.'s "Casuals by China Pearl" Product and Box*

At an export trade show held in China in October 1993, Hung Lam, the President and owner of C.C.A., received from an export company a set of dinnerware items that were almost identical in appearance to Tienshan's Kitchen Basics banded dinnerware. Tr. at 66, 77–78. C.C.A. decided that it would sell this dinnerware under the name "Casuals by China Pearl" ("Casuals").[2] The set of dinnerware items given to C.C.A. by the export company—like the Kitchen Basics product, a set of Casuals comprises four dinner plates, four salad/dessert plates, four bowls, and four mugs—were packaged in Tienshan's box. Tr. at 66, 77–78. Because this was C.C.A.'s first experience in selling a sixteen-piece set, it needed to use Tienshan's box as a guide to determine the dimensions that it would need its own box to have, according to Lam, who had seen the box once before, in a Bradlees store in the Spring of 1993. Tr. at 77–79.

On his way from the trade show to his home in the United States, Lam stopped off

---

**1.** Bradlees, Inc. was also named as a defendant, but the Court was informed at the evidentiary hearing on the motion for a preliminary injunction that the complaint was being dismissed as to Bradlees pursuant to Fed.R.Civ.P. 41(a)(1). Tr. at 3–4.

**2.** In June 1992, Tienshan attempted to obtain a copyright in the Kitchen Basics dinnerware design, but its application was denied. Tr. at 45–49. Thus, Tienshan does not claim that C.C.A. has infringed any of Tienshan's proprietary rights in the design of the dinnerware itself.

in Hong Kong to give the box to a Mr. Chiu of Flying Colors Design, in order to design the box for the Casuals product. Tr. at 67, 79–80. C.C.A. had had 70 to 80 previous boxes designed by Chiu. Tr. at 80. Lam told Chiu to copy only the size of Tienshan's box, and that he could use the same words that were used on Tienshan's box to describe the contents of C.C.A.'s box and the fact that the items were "dishwasher safe" and "microwave compatible." Tr. at 68, 81–82, 118. Lam testified that he specifically told Chiu not to copy anything else from Tienshan's box. Tr. at 67. After a trade show of dinnerware—known as a "tabletop show"—in New York City in November 1993, Lam also asked Chiu to design a logo for the Casuals box. Tr. at 88.

On December 9, 1993, not having heard from Chiu, Lam faxed a sketch of a proposed box design, which, he testified, he drew without using Tienshan's box as a guide. Tr. at 71–72, 82–83. Lam's sketch displayed a representative of each piece in the set. Tr. at 83. After Chiu informed Lam that such a design would greatly increase costs, Lam sent Chiu another sketch the following day. Tr. at 84. Both sketches included the words "Casuals" on the upper-left hand corner of the front panel of the box, but without a rectangle around the word. Several days later, Lam received from Chiu an initial sketch of the box design that Chiu had devised. Tr. at 69, 85. Lam found two flaws with this sketch: like the Tienshan box, it failed to show the small plate; and, also like the Tienshan box, it had a space for the Uniform Products Code ("U.P.C.") symbol on the bottom of the box, rather than on the side, as Lam desired. Tr. at 70, 72, 85–86. Lam informed Chiu of these "errors," whereupon Chiu completed a second sketch, which Lam approved later that month. Tr. at 70, 86. Besides correcting these two "errors," Chiu also included a rectangle around the word "Casuals" in the final sketch.

*Tienshan's Awareness of C.C.A.'s Alleged Infringement and the Filing of this Action*

Lam testified that he believed that the Casuals box had been seen at least twice by Jan Lin Chen, the Executive Vice President of Tienshan, prior to 1995. It was allegedly first seen during a housewares show in Chicago in January 1994, when Chen apparently visited Lam at the C.C.A. booth. Tr. 103–04. Because the Casuals box was placed somewhere behind Lam, he assumed that Chen noticed it. Tr. at 106, 107–08, 113. Chen, however, could not recall whether or not she visited the C.C.A. booth at that particular show, and could not recall seeing any C.C.A. boxes at that show. Tr. at 167, 169.

Chen also visited C.C.A.'s showroom in New York City during the "tabletop show" in November 1994. Tr. at 109, 110, 159–60. Lam believed that Chen saw the Casuals box at that time, given the prominent placement of C.C.A.'s display area. Tr. at 111. Chen, however, testified that she did not see the boxes, but only some bowls from C.C.A.'s Casuals set. Tr. at 161, 167–68. After seeing the bowls, she told Braunschweig about them. Tr. at 167. Chen's duties include being the Chief Financial Officer of Tienshan and its liaison to its Chinese suppliers. Tr. at 156. Her job does not involve the design of either the product or its packaging. Tr. at 157, 168.

Braunschweig first became aware of the Casuals box on April 10, 1995, when he saw it in a Bradlees store. Tr. at 28–29, 54. Ten days later, Tulino and Hogg executed a copyright assignment transferring all of their rights in the Kitchen Basics box design to Tienshan, and five days after that a Certificate of Registration of the Kitchen Basics box design was issued to Tienshan by the United States Copyright Office.

On May 3, 1995, Tienshan petitioned this Court for an Order to Show Cause why C.C.A. should not be temporarily restrained from using its Casuals box. The request for a Temporary Restraining Order was denied on May 5, 1995. Expedited discovery took place and an evidentiary hearing on Tienshan's motion for a preliminary injunction was held on June 2, 1995.

## CONCLUSIONS OF LAW

### I. Laches

■ As a threshold matter, C.C.A. argues that Tienshan should be prevented from obtaining equitable relief because Tienshan

"slept on its rights." An inordinate and unexplained delay between the time Tienshan learned of C.C.A.'s alleged infringement and the time Tienshan filed the instant suit could indeed prevent it from obtaining the relief it now seeks. *See, e.g., New Era Publications International v. Henry Holt and Co., Inc.,* 873 F.2d 576, 584 (2d Cir.1989), *cert. denied,* 493 U.S. 1094, 110 S.Ct. 1168, 107 L.Ed.2d 1071 (1990).

C.C.A. adduced evidence that an officer of Tienshan may have known about the C.C.A. box design as early as January 1994, approximately sixteen months before this action was brought. However, that evidence was inconclusive. Lam stated that Chen visited him on two occasions, once in January 1994 and once in November 1994, and that he thought that she saw the Casuals box on both occasions. However, Lam did not actually see Chen notice the Casuals box and could only assume that she saw it. For her part, Chen recalled visiting Lam in November 1994 but could not recall whether she visited him in January 1994. On neither occasion did she recall seeing the Casuals box. The inference that she did not in fact see it is strengthened by her testimony that she told Braunschweig about C.C.A.'s bowls—not the box—which she erroneously thought infringed rights held by Tienshan in the dinnerware itself, shortly after seeing them in November 1994.

Moreover, Chen's duties consist of being Tienshan's Chief Financial Officer and its liaison to its Chinese exporters. There is little reason to think that even if Chen cast a cursory glance at the box, she would have recognized its design as infringing the Kitchen Basics box design.

Braunschweig, on the other hand, as president of Tienshan, was more likely to be familiar with the various box designs for its products. He testified that he first became aware of the Casuals box design on April 10, 1995, and there was no evidence to the contrary. From that point, he moved swiftly, securing an assignment of rights from the designer of the Kitchen Basics box, acquiring a valid copyright on the packaging design, and instituting this action, all within approximately three weeks. For these reasons, the Court determines that Tienshan is not pre-vented by the doctrine of laches from obtaining equitable relief.

## II. Standard for Obtaining a Preliminary Injunction

■ Tienshan seeks a preliminary injunction against C.C.A.'s alleged infringing activity pursuant to § 502(a) of the Copyright Act of 1976. 17 U.S.C. § 502(a). In order to obtain a preliminary injunction, Tienshan must " 'establish[ ] possible irreparable injury and either (1) probable success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in [Tienshan's] favor.' " *Consumer's Union of U.S., Inc. v. General Signal Corp.,* 724 F.2d 1044, 1048 (2d Cir.1983), *cert. denied,* 469 U.S. 823, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984) (quoting *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema Ltd.,* 604 F.2d 200, 206–07 (2d Cir. 1979)). *See Fisher–Price, Inc. v. Well–Made Toy Manufacturing Corp.,* 25 F.3d 119, 122 (2d Cir.1994). However, a showing of a prima facie case of copyright infringement raises a presumption of irreparable harm. *See Wainwright Sec., Inc. v. Wall Street Transcript Corp.,* 558 F.2d 91, 94 (2d Cir.1977), *cert. denied,* 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 759 (1978); *Dynamic Solutions, Inc. v. Planning & Control, Inc.,* 646 F.Supp. 1329, 1337 (S.D.N.Y.1986). To establish a prima facie case of infringement, the Supreme Court has held, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 1296, 113 L.Ed.2d 358 (1991).

## A. Ownership of a Valid Copyright

■ A copyright registration certificate, when issued within five years of publication of the work, constitutes prima facie evidence of ownership of a valid copyright. *See* 17 U.S.C. § 410(c). Tienshan has produced such a certificate. Moreover, where a putative copyright holder obtained an assignment of rights before registration, the registration certificate also provides prima facie evidence

that the chain of title is intact. *See Sygma Photo News, Inc. v. High Society Magazine, Inc.,* 778 F.2d 89, 92 (2d Cir.1985). The burden is therefore on C.C.A. to rebut the presumption that Tienshan is the rightful owner of a valid copyright. *See Gaste v. Kaiserman,* 863 F.2d 1061, 1064 (2d Cir. 1988). C.C.A. has not done so. Therefore, Tienshan has satisfied the Court that Tienshan owns a valid copyright in its box design.

## B. Copying of Constituent Elements That Are Original

The remaining question—whether C.C.A. copied constituent elements of Tienshan's box design that are original—breaks down into two distinct issues. First, Tienshan must show that C.C.A., as a factual matter, physically copied its box design from Tienshan. *See Fisher–Price,* 25 F.3d at 122; *Folio Impressions, Inc. v. Byer California,* 937 F.2d 759, 765 (2d Cir.1991); *Arnstein v. Porter,* 154 F.2d 464, 468 (2d Cir.1946). Second, assuming it is successful in that endeavor, Tienshan must further show that C.C.A. copied so much of the protectible elements of Tienshan's design that the copying was "illicit," *i.e.,* it constituted "unlawful" or "improper" appropriation. *Fisher–Price,* 25 F.3d at 122–23, *Folio Impressions,* 937 F.2d at 765; *Arnstein,* 154 F.2d at 468.

### 1. Physical copying

The act of copying may be proven by either direct or circumstantial evidence. However, direct evidence of copying, for example an admission by the defendant or testimony of an eyewitness to the copying, is exceedingly rare. *See* 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.01[B], at 13–10 to 13–12 (1994). Therefore, copying is often proven through circumstantial evidence consisting of (1) access by the defendant to the plaintiff's work, and (2) probative similarity [3] between the two works. *See Laureyssens v. Idea Group, Inc.,* 964 F.2d 131, 140 (2d Cir.1992). Here, C.C.A.

conceded that it had access to Tienshan's work. Tr. at 181. Therefore, if the Court finds "similarities that, in the normal course of events, would not be expected to arise independently in the two works" and which therefore "are probative of [C.C.A.'s] having copied as a factual matter from [Tienshan's] work," it can infer that C.C.A. physically copied Tienshan's box design. *See* 3 Nimmer § 13.01[B], at 13–13. Moreover, given that access has been conceded, the level of probative similarity necessary to show physical copying is diminished. *See Aldon Accessories Ltd. v. Spiegel, Inc.,* 738 F.2d 548, 553–54 (2d Cir.), *cert. denied,* 469 U.S. 982, 105 S.Ct. 387, 83 L.Ed.2d 321 (1984); *Steinberg v. Columbia Pictures Industries, Inc.,* 663 F.Supp. 706, 714 (S.D.N.Y.1987).

In determining "probative similarity," the trier of fact may "dissect" the work to separate the similarities from the dissimilarities. *See Arnstein,* 154 F.2d at 468. It is also acceptable to consider both the protectible and unprotectible elements together rather than considering only the protectible elements, as the Court must do when determining "substantial similarity." *See Fisher–Price,* 25 F.3d at 123.

The Court finds the following similarities between the two works to be probative of copying by C.C.A.:

1. Each has a large dinner plate in the lower left corner of the front panel, wrapped around to the bottom and side panels.

2. To the right of this plate, and slightly overlapping it, each has a bowl.

3. Atop this bowl, each has a mug tilted with its handle to the upper right. The bottom left corner of each mug is submerged below the rim of the bowl.

4. Above the bowl and mug, each has a small plate on the top panel, wrapped around slightly to the front panel.

---

**3.** The term "probative similarity" in this initial inquiry is used to avoid confusion with the later inquiry into "substantial similarity." *See* 3 *Nimmer* § 13.01[B], at 13–12; Alan Latman, *"Probative Similarity" as Proof of Copying: Toward Dispelling Some Myths in Copyright Infringement,* 90 Colum.L.Rev. 1187, 1204–14 (1990); *see also McDonald v. Multimedia Entertainment, Inc.,* 20 U.S.P.Q.2d 1372, 1374, 1991 WL 311921 (S.D.N.Y.1991) (utilizing the term "probative similarity").

5. Each has its respective logo emblazoned on a rectangular field in the upper left corner of the front panel and in the upper left corner of the top panel.

6. Each has at least two bowls, one atop the other, on the side panel.

7. Each has the following words in the following order on the upper half of the side panel: "4 DINNER PLATES. 4 DESSERT/SALAD PLATES. 4 SOUP/CEREAL BOWLS. 4 MUGS." [4]

8. Each has these words highlighted in varying shades, with the number "4" set off in a separate box.

9. Each has the following words in the following order on the bottom of the side panel: "DISHWASHER SAFE. MICROWAVE COMPATIBLE."

On the other hand, there are certainly dissimilarities between the two works. For example:

1. The Casuals box has an additional small plate in the upper left corner of the top panel while the Kitchen Basics box does not.

2. The Casuals box has a small plate in the center of its large plate, which the Kitchen Basics box lacks.

3. The Kitchen Basics box has three slices of fruit and vegetables on its small plate while the Casuals box has another mug in that spot, tilted at a more acute angle than the first.

4. The Casuals box has only two bowls on its side panel, with one mug atop them, tilted at precisely the same angle as described immediately above, its bottom left corner submerged below the rim of the bowl, and another mug just above the first, tilted with its handle down and to the right; the Kitchen basics box has four bowls on the side panel, the bottom three neatly stacked and the top bowl askew, with round pieces of cereal falling into the top bowl.

5. A bagel accompanies the mug and bowl on the front of the Kitchen Basics box but not the Casuals box.

In addition, the testimony regarding Lam's sketches, and Chiu's initial and final sketches, of the Casuals box are probative of the question whether Chiu copied Tienshan's box. First, Chiu's omission in his first sketch of the small salad/dessert plate, contrary to Lam's instructions but consistent with the Kitchen Basics box, indicates that Chiu copied Tienshan's design. This is also true of the space for the U.P.C. symbol, which Chiu put on the bottom of the Casuals box, the same placement as on the Kitchen Basics box.

Furthermore, both of Lam's initial sketches show a tilted mug atop a bowl on the *left* side of the front panel and a small plate inside a larger plate to the *right*. In Chiu's final design, however, the placement of these items is reversed: the mug and bowl are on the *right* side and the two plates are to the *left*. Notably, this is precisely the placement of the items on the Kitchen Basics box. No explanation—aesthetic or otherwise—was provided for this positioning of the dinnerware except that it was a copy of the arrangement on the Kitchen Basics box.

The sum of this evidence is sufficiently probative of copying that, given that access has been conceded, the Court finds that Tienshan has made a strong prima facie showing that C.C.A. physically copied the Kitchen Basics box in designing its Casuals box.

██ Once this prima facie showing has been made, C.C.A. may rebut it by producing evidence that it independently created the Casuals box. *See Jack Lenor Larsen, Inc. v. Dakotah, Inc.,* 452 F.Supp. 99, 100 (S.D.N.Y. 1978). C.C.A. has produced unconvincing evidence of independent creation. Lam testified that this was the first time Chiu had ever been given a competitor's box as a "guide" in some seventy or eighty instances in which Chiu designed a box for C.C.A. While this history of independent creation militates slightly toward an inference that the box design in this case was similarly

4. C.C.A. conceded at the hearing that it had copied the text from Tienshan's box, although

not necessarily the particular arrangement of the words.

created independently, *see* 3 *Nimmer* § 13.01[B], at 13–14, there was also testimony that Chiu designed the Casuals box at a very busy time of year, Tr. at 71, with the inference being that he was rushed into taking a few shortcuts. Moreover, C.C.A. failed to produce at the hearing the one person who knows first-hand whether the Casuals box was copied from the Kitchen Basics box: Chiu. Because C.C.A. has failed to rebut Tienshan's strong prima facie showing, the Court finds it highly likely that Tienshan will be able to demonstrate that C.C.A. physically copied the Kitchen Basics box.

### 2. Improper Appropriation

Once Tienshan has proven physical copying, the sole remaining question "is whether [C.C.A.] took from [Tienshan's] work so much of what is pleasing to the [eyes] of lay [observers] who comprise the audience" for the work in question "that [C.C.A.] wrongfully appropriated something which belongs to [Tienshan]." *Arnstein,* 154 F.2d at 473. In other words, the question is whether C.C.A.'s and Tienshan's works are "substantially similar." *See Comptone Co. v. Rayex Corp.,* 251 F.2d 487, 488 (2d Cir.1958).

■ To a large extent, this question has already been answered, for while the terms "probative similarity" and "substantial similarity" relate to different elements of a claim of copyright infringement, the analyses that the two terms implicate will often be very similar. One difference is that when determining "probative similarity," the finder of fact may "dissect" the work, separating in his or her mind the similarities from the dissimilarities. *See Arnstein,* 154 F.2d at 468. On the other hand, the rule in this Circuit has long been that when determining "substantial similarity," the finder of fact is constrained to look at the work as a whole, without "dissection," as an "ordinary lay observer" would. *See id.*

■ A second difference occurs in cases, such as this one, where a work consists of both protectible and unprotectible elements. In determining probative similarity in such cases, the trier of fact may look to both the protectible and unprotectible elements of a work, *see Fisher–Price,* 25 F.3d at 123, while

substantial similarity in such cases is determined by "ignoring those aspects of a work that are unprotectible in making the comparison." *Laureyssens,* 964 F.2d at 141. This analysis has been dubbed the "more discerning 'ordinary observer' test." *Folio Impressions,* 937 F.2d at 765–66.

■ Thus, it is necessary to identify which elements of the Kitchen Basics box are protectible. The Supreme Court held more than 100 years ago that a simple photograph can constitute original, protectible expression. *See Burrow–Giles Lithographic Co. v. Sarony,* 111 U.S. 53, 58, 4 S.Ct. 279, 281, 28 L.Ed. 349 (1884). Moreover, a photograph need only exhibit a "dash" of originality in order to be protectible. *Rogers v. Koons,* 960 F.2d 301, 307 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992); *see also Jeweler's Circular Publishing Co. v. Keystone Publishing Co.,* 274 F. 932, 934 (S.D.N.Y.1921) (L. Hand, J.) ("[N]o photograph, however simple, can be unaffected by the personal influence of the author, and no two will be absolutely alike."), *aff'd,* 281 F. 83 (2d Cir.), *cert. denied,* 259 U.S. 581, 42 S.Ct. 464, 66 L.Ed. 1074 (1922). As the Second Circuit has explained: "Elements of originality in a photograph may include posing the subjects, lighting, angle, selection of film and camera, evoking the desired expression, and almost any other variant involved." *Rogers,* 960 F.2d at 307.

■ Thus, even if Tienshan simply had pictured one large plate in the center of the front panel of its box, such a design might still evince the requisite "dash" of originality for copyright protection. However, Tienshan has done much more than that. The Kitchen Basics box pictures five bowls, one mug, one large plate, and one small plate, along with various food items, posed in a particular manner and "wrapped around" four panels of the box. The placement of the Tienshan mark, the Kitchen Basics logo, and the text on the side panel of the box are also part of this arrangement. Thus, the Court holds that the overall arrangement of material on the box constitutes original, and therefore protectible, expression.

■ A similar analysis should be used with regard to the text on the side of the Tienshan box. This text simply states the contents of the box, and the fact that the product may be washed in a dishwasher and used in a microwave oven. Such simple statements of factual matters, in themselves, are not protectible subject matter. *See Feist*, 499 U.S. at 361–62, 111 S.Ct. at 1296 (names, addresses, and telephone numbers listed in phone book); *Kitchens of Sara Lee, Inc. v. Nifty Foods Corp.*, 266 F.2d 541, 545 (2d Cir.1959) (ingredients listed on cake packages). After all, there are only a limited number of ways to convey the idea "dinner plate."

■ However, the way these facts are selected and arranged is a proper subject for copyright protection, as long as the facts are selected and arranged with even a spark of originality. *See Feist*, 499 U.S. at 350–51, 111 S.Ct. at 1290. The *selection* of which product characteristics to print on the side of the Kitchen Basics box arguably was dictated largely by utilitarian concerns—for example, the consumer would like to know from reading the box what it contains. However, there appear to be no similar instrumental concerns driving the *arrangement* of the factual matter. For example, there is no reason why "Mugs" must be listed last, directly after "Soup/Cereal Bowls," or why "Dishwasher Safe" must come before "Microwave Compatible." Therefore, in determining the question of substantial similarity, the Court will consider the arrangement, but not the selection, of the factual matter listed on the side of the boxes; nor will it consider the facts asserted themselves.

■ On each box, the focus of attention is the front and top panel. One's eyes are immediately drawn to the similarities in the arrangement of the dinnerware pictured there. On each box, a distinctive pattern is formed by the large plate in the lower left corner, the bowl and mug to its right, the smaller plate above, and the rectangle containing the name of the respective product. This distinctive pattern dominates the design of each box as a whole. Additionally, on the side panel, which is of somewhat lesser sig-

nificance, the arrangement of text is identical on each box.

■ C.C.A. did make some minor changes in the pattern when designing the Casuals box. Notably, it omitted the food items that are represented on the Kitchen Basics box and it added several more items of dinnerware. However, it is well-established that substantial similarity means something less than complete identity. *See, e.g., Novelty Textile Mills, Inc. v. Joan Fabrics Corp.*, 558 F.2d 1090, 1093 (2d Cir.1977). Dissimilarities between the two works will not exonerate a defendant if the two works are substantially similar, for "[n]o plagiarist can excuse the wrong by showing how much of his work he did not pirate." *Sheldon v. Metro–Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir.), *cert. denied*, 298 U.S. 669, 56 S.Ct. 835, 80 L.Ed. 1392 (1936). Overall, using the "more discerning 'ordinary observer' test," the Court reaches the conclusion that the two boxes are substantially similar. Tienshan has therefore shown that it will likely satisfy the element of unlawful appropriation, the final element of a case of copyright infringement.

### III. Irreparable Injury

As noted previously, where a plaintiff makes out a prima facie case of copyright infringement, irreparable injury can be presumed. C.C.A. has not rebutted this presumption. Indeed, Braunschweig's testimony that he could only speculate as to why Tienshan's first quarter profits for the Kitchen Basics product were down only reinforces the notion that the damages from infringements such as this one are difficult or impossible to calculate, and the harm, therefore, possibly irreparable.

### CONCLUSION

Tienshan has demonstrated a likelihood that at trial it will be able to prove copyright infringement by C.C.A. It has demonstrated that it is the owner of a valid copyright; via a showing of "probative similarity" and C.C.A.'s concession that it had access to the Kitchen Basics box, Tienshan has circumstantially demonstrated that C.C.A. physically copied the box; and through a showing of

substantial similarity, Tienshan has demonstrated that C.C.A.'s copying amounted to unlawful appropriation. The presumption of irreparable injury flowing from this infringement has not been rebutted on the evidence adduced to date. Tienshan has thus met the requirements for issuance of a preliminary injunction: probable success on the merits and possible irreparable injury. Therefore, Tienshan's motion for a preliminary injunction is granted.

IT IS HEREBY ORDERED that, pending a trial on the merits of this action, C.C.A. is enjoined from directly or indirectly importing, offering for sale, selling, transferring, or disposing of any product on which is imprinted Tienshan's copyrighted design known as the Kitchen Basics box design, or any design substantially similar to it, including the packaging of C.C.A.'s Casuals line of dinnerware; and

IT IS FURTHER ORDERED that this order is conditioned upon Tienshan's filing with the Clerk of Court, no later than the close of business on August 25, 1995, an undertaking in the form of a bond or cash in the amount of $10,000 to secure payment of such costs and damages as may be incurred or suffered by any party that is found to have been wrongfully restrained.

SO ORDERED.