ODEGARD, INC. and Stephanie
Odegard, Plaintiffs,

v.

COSTIKYAN CLASSIC CARPETS, INC.
and JSL Industries, Defendants.

No. 97 Civ. 1179 (JGK).

United States District Court,
S.D. New York.

May 6, 1997.

Arthur R. Lehman, David Gikow, Lehman & Gikow, New York City, for Plaintiffs.

Thomas J. Hall, Alison Kronenberg Chadbourne & Parke, L.L.P., New York City, for Defendants.

## OPINION AND ORDER

KOELTL, District Judge:

The plaintiffs in this action, Odegard, Inc. and Stephanie Odegard, have sued the defendants, Costikyan Classic, Carpets, Inc. ("Costikyan Carpets") and J.S.L. Industries ("JSL"), for copyright infringement, alleging that the defendants improperly copied three of their carpet designs. The defendants deny the plaintiffs' allegations and have counterclaimed, seeking a declaration that one of the plaintiffs' copyright registrations is invalid.

This Court consolidated the hearing of the plaintiffs' application for a preliminary injunction with the trial on the merits. From March 3, 1997 to March 5, 1997, the parties tried this case to the Court in a non-jury trial. Pursuant to Federal Rule of Civil Pro-

cedure 52, the Court makes the following Findings of Fact and reaches the following Conclusions of Law.

FINDINGS OF FACT:

*THE PARTIES*

1. Odegard, Inc. is a corporation organized under the laws of the State of New York. Its principal place of business is New York City. (Joint Pre–Trial Order Undisputed Facts ("UF") at ¶ 1). Odegard, Inc. is in the business of designing, importing and selling Tibetan carpets. (Trial Transcript ("Tr.") at 67 [Odegard] ).

2. Odegard is the president of Odegard, Inc. (UF at ¶ 2). She formed Odegard in 1989. (Tr. at 77–78 [Odegard] ).

3. Defendant Costikyan Carpets is a corporation organized and existing under the laws of the State of New York. Its principal place of business is located in Queens County, New York. (UF at ¶ 3). Costikyan Carpets was formed in 1993 to engage in the business of manufacturing, importing and selling handmade area rugs. (Tr. at 318–19 [Costikyan] ). Phillip Costikyan is the president, sole director, and sole shareholder of Costikyan Carpets. (UF at ¶ 4).

4. Defendant JSL is a corporation organized and existing under the laws of the State of New York. Its principal place of business is New York City. (UF at ¶ 5). JSL maintains a showroom at 969 Third Avenue in Manhattan. (Tr. at 211 [Braunstein] ). JSL was formed in 1991 to manufacture custom carpets. (Tr. at 211–12 [Braunstein] ). In 1994, JSL began manufacturing and selling Tibetan carpets. (Tr. at 214 [Braunstein] ). Len Braunstein is the president, sole director and sole shareholder of JSL. (UF at ¶ 6).

5. Costikyan Carpets and JSL have formed a partnership or joint venture. This joint venture manufactures and sells hand knotted Tibetan-style carpets under the name "Kent Collection." (UF at ¶ 7).

*THE COPYRIGHTS*

6. The plaintiffs allege that the defendants infringed upon their copyrights to their "Asterisk," "Chaklo," and "Belak Ripyun" carpet designs.

7. Odegard, Inc. filed an application with the United States Copyright Office, dated January 23, 1997, for a Certificate of Registration for its "Asterisk" carpet design. (Plaintiffs' Exhibit ("PX") 16; Tr. at 169, 186). On March 14, 1997, after the completion of trial, the United States Copyright Office issued a Certificate of Registration for the "Asterisk" carpet design. (PX 46). That registration states that the application was received on January 31, 1997. (*Id.*). The parties stipulated to reopening the record to admit this Certificate of Registration into evidence. (March 21, 1997 Stipulation and Order).

8. Odegard, Inc. is the owner of a copyright to its "Chaklo" carpet design pursuant to a Certificate of Registration issued effective as of May 24, 1995 by the United States Copyright Office. (PX 9).

9. Odegard is the owner of a copyright to the "Belak Ripyun" carpet design pursuant to a Certificate of Registration, issued effective as of May 24, 1995 by the United States Copyright Office. (PX 3).

*THE PLAINTIFFS' CARPETS*

ASTERISK

10. The "Asterisk" carpet design was created by the plaintiffs in cooperation with Holly Hunt, Ltd. ("Holly Hunt"), a Chicago-based design studio. Holly Hunt maintains a showroom in the D & D Building, which is located at 979 Third Avenue in Manhattan. In 1994, representatives of Holly Hunt visited the plaintiffs' showroom and agreed to design a line of silk and wool Tibetan carpets in collaboration with the plaintiffs. (Tr. at 23–24 [Levine]; Tr. at 103–04 [Odegard] ).

11. As part of this collaboration, Douglas Levine, at the time Holly Hunt's Director of Design, and Laura Kirar, Levine's assistant, began working on the design that would become the "Asterisk" carpet. During this design process, Levine and Kirar were primarily inspired by Japanese textiles. The two designers made a series of sketches, and began to develop a carpet design featuring an eight-pointed motif. (PX 19; Tr. at 27 [Levine]; Tr. at 49–50 [Kirar] ). Levine testified at trial that the motif "wasn't really a

star because it had no hard edge" but rather "free-flowing spots." (Tr. at 27 [Levine]).

12. Levine and Kirar then experimented with designs featuring different sized eight-pointed figures, which they came to refer to as asterisks. (PX 19; Tr. at 27 [Levine]; Tr. at 50 [Kirar]). The designers also experimented with the placement of the motifs on the carpet. (Tr. at 36 [Levine]).

13. The final product of this designing process was the plaintiffs' "Asterisk" carpet. This carpet features eight-point motifs. These motifs are relatively small and there is considerable space between each motif. The full size "Asterisk" carpet's border is less than an inch wide. (PX 17A, 17B).

14. The defendants assert that the "Asterisk" design is not sufficiently original to be copyrightable. The defendants point out that Levine and Kirar both testified that asterisks are common symbols that have been used for centuries. (Tr. at 34 [Levine]; Tr. at 61 [Kirar]). The defendants also entered into evidence a number of textile patterns featuring eight-pointed figures. (Defendants' Exhibit ("DX") NN, OO, PP).

15. However, the textile designs entered into evidence by the defendants all used precise and rigidly geometric eight-pointed figures. (DX NN, OO, PP). In contrast, the motifs on the plaintiffs' "Asterisk" carpet are less geometric or precise, and appear to have been drawn freehand. (PX 17A, 17B). Both Levine and Kirar testified that they consciously designed the eight-pointed figures to be less rigid than previous "star designs." (Tr. at 39 [Levine]; Tr. at 65 [Kirar]).

CHAKLO

16. The plaintiffs' "Chaklo" carpet was designed in 1994 by Odegard and Dawne Weaver, an artist employed by Odegard, Inc. The design was inspired by a customer's request for a custom carpet. The customer wanted a carpet with a design based on the shapes of wrought iron gates and railings. Weaver collected photographs of wrought iron pieces and made sketches based on those photos. These sketches became the "Chaklo" carpet design. (PX 12, 13; Tr. at 15–19 [Weaver]). During the trial, the defendants stipulated that the "Chaklo" carpet

design was an original creation of the plaintiffs. (Tr. at 16).

17. The "Chaklo" carpet is a symmetrical pattern. (PX 10; Tr. at 19 [Weaver]). It features linear motifs in shapes that resemble hearts, "S's," curlicues reminiscent of snail shells, and other shapes commonly found in wrought iron grillwork. The "Chaklo" carpet has a border that contains similar motifs. (PX 10).

BELAK RIPYUN

18. The plaintiffs produced their "Belak Ripyun" carpet design by modifying their "Belak" design, which had been created in 1990. "Belak" is the Tibetan word for "frog's foot." The "Belak Ripyun" carpet was designed in response to comments by the plaintiffs' customers that the "Belak" carpet design was too linear, and therefore gave too much of a "direction" to the room. The "Belak Ripyun" uses the same frog's foot motif as the "Belak," but the design is intended to draw the eye to the center of a room rather than in one particular direction. (Tr. at 89–90 [Odegard]).

19. The "Belak Ripyun" carpet has frog's foot motifs that emanate from the center of the carpet. The motifs are triangular, with lines to represent a frog's toes. The carpet has a border with triangular patterns that resemble mountain peaks. In comparison to the "Asterisk" carpet, the motifs on the "Belak Ripyun" carpet are very close together. (PX 4).

*THE DEFENDANTS' CARPETS*

STAR CARPET

20. The plaintiffs allege that the defendants' "Star" carpet design infringes on their "Asterisk" carpet design. The "Star" carpet was shown by the defendants at the 1997 carpet shows in Atlanta and Las Vegas. (Tr. at 190–92 [DeMarco]). The "Star" carpet design has many similarities to the plaintiffs' "Asterisk" carpet design. Both designs have free-form, rather than rigidly geometric or precise eight-point figures. Both carpets have considerable negative space between the motifs. Both carpets also have borders, although the "Star" carpet has a larger border than the "Asterisk" carpet. Moreover,

the "Star" and "Asterisk" carpets have been produced using very similar color schemes. (PX 17A, 17B, 29).

21. At trial, Braunstein asserted that he created the "Star" carpet independently, and that he had not seen the plaintiffs' "Asterisk" carpet at the time he created the "Star" carpet. Braunstein testified that in 1995 he gave a factory in Nepal instructions to create a carpet with a "star" design. (Tr. at 274 [Braunstein]). Braunstein further testified that in response to this request, he received samples from the factory in Nepal that featured various types of stars. (DX HH, II, JJ; Tr. at 261 [Braunstein]). However, the stars on these samples were different from the motifs on the final "Star" carpet. (DX HH, II, JJ; PX 29). The samples contained stars that were more geometric and precise looking than the free-form motifs that appear on the final "Star" carpet. (DX HH, II, JJ; PX 29).

22. Braunstein's assertion that the "Star" carpet was independently created is not credible. Braunstein failed to explain the process by which the Tibetan carpet factory came to translate his cursory instructions into samples, some of which feature eight-pointed figures that somewhat resemble the plaintiffs' "Asterisk" carpet. Moreover, Braunstein failed to explain how these samples came to be modified so that they more closely resembled the free-form eight-pointed motifs found on the plaintiffs' "Asterisk" carpet.

23. The defendants clearly had access to the plaintiffs' "Asterisk" carpet design. The "Asterisk" carpet has been displayed in the Holly Hunt showroom in New York since approximately March, 1996. (Tr. at 29–30 [Levine]). At trial, Braunstein testified that he had visited a designer's showroom that was located right next to the Holly Hunt showroom. (Tr. at 241 [Braunstein]). The "Asterisk" carpet was also shown at a July 1996 carpet show in Atlanta that both Costikyan and Braunstein attended. (Tr. at 107 [Odegard]; Tr. at 228 [Braunstein]; Tr. at 334 [Costikyan]).

SWIRL CARPET

24. The plaintiffs' allege that the defendants' "Swirl" carpet infringes on their "Chaklo" carpet design. The "Swirl" carpet

was shown by the defendants at the 1997 carpet show in Atlanta. (Tr. at 120 [Odegard]). The "Swirl" carpet contains design elements based on shapes similar to those found the "Chaklo" carpet. Both carpets contain linear motifs in various partially circular shapes. Both carpets contain shapes that resemble hearts, "S's," and swirls reminiscent of snail shells.

25. There are also differences between the carpets. The "Chaklo" carpet is symmetrical, with the entire carpet appearing to emanate symmetrically from the center of the carpet. In contrast, the "Swirl" carpet is asymmetrical, with its motifs scattered around the carpet with no set pattern. While both carpets contain motifs that resemble hearts, "S's" and swirls reminiscent of snail shells, there are differences between the actual motifs in both size and design. Moreover, the "Swirl" carpet has a fringe but no border, the motifs run into the edge of the carpet and some of the motifs are cut off. The "Chaklo" carpet has no fringe but has a border that contains additional motifs, and all of the motifs end before the border begins. (PX 10, 28). The overall appearance of the "Chaklo" carpet is a structured symmetrical design while the "Swirl" carpet uses a more free form design.

26. Braunstein asserts that he independently created the "Swirl" carpet design. Braunstein testified at trial that the process of designing the "Swirl" carpet began in 1992 in response to a customer's request for a carpet with a free-form, non-repeat pattern. (Tr. at 297 [Braunstein]). Braunstein further testified that he worked with a mill to produce a drawing based on this customer's request. (PX 26; Tr. at 283 [Braunstein]). According to Braunstein, that original drawing, was transformed in 1996 by a designer in Bangkok into the final "Swirl" carpet design. (PX 26; Tr. at 284–86, 297 [Braunstein]).

27. However, the original drawing is very different from the final "Swirl" design drawing. The 1992 design drawing contains linear motifs in the shapes of circles and spirals, but does not contain the shapes that resemble a heart and an "S" that are present in the final design. (PX 26). Braunstein

was unable to explain how the 1992 design was transformed into the final "Swirl" design, except to say that it was created by a designer in Bangkok.

28. In July, 1996, the plaintiffs' "Chaklo" carpet was pictured in an advertisement for a furniture maker. In that picture only a portion of the "Chaklo" carpet is showing. That portion of the carpet contains "heart" and "S" motifs similar to those found on the "Swirl" carpet. The "Chaklo" carpet pictured in the advertisement appears to be the same color as the "Swirl" carpet. The advertisement identified the carpet pictured as having been produced by the plaintiffs. (PX 15; Tr. at 186).

29. At a trade show held in Las Vegas in 1997, Braunstein told Thomas Demarco, the plaintiffs' general manager, that he had obtained the idea for the "Swirl" carpet from a home design magazine. (Tr. at 195 [DeMarco]). Thus, it appears that the defendants added elements to the "Swirl" carpet from the elements of the "Chaklo" carpet that were visible in the advertisement. The "Chaklo" carpet design has also been featured in other magazine advertisements. (PX 15; Tr. at 186).

ELK'S FOOT

30. The plaintiffs allege that the defendants displayed and offered for sale both an exact copy of their "Belak Ripyun" carpet, and a "Elk's Foot" carpet that was sufficiently similar to the "Belak Ripyun" carpet to infringe upon that design. The defendants deny having ever displayed or sold an exact copy of the "Belak Ripyun" carpet.

31. At trial, the plaintiffs were unable to produce a drawing, photograph or carpet sample used by the defendants to sell such an exact copy. The plaintiffs attempted to show that the defendants displayed an exact copy of the "Belak Ripyun" carpet through the testimony of Edith Ajello, a carpet sales manager. She testified that she had seen an exact copy of the plaintiffs' carpet in the defendants' booth at the Atlanta carpet show, although she could not recall if she had seen a full carpet or only a sample. (Tr. at 175–76 [Ajello]). Ajello's testimony was unconvincing that she had actually seen a "Belak Ripyun" carpet at the defendants' booth. (Tr. at 175–181 [Ajello]). There was evidence both that she may have seen the "Elk's Foot" rather than the "Belak Ripyun," and that she may have seen a "Belak Ripyun" carpet in a booth other than the defendants' booth. (Tr. at 176–78, 180–81, 202 [Ajello]). Braunstein denied that he showed a "Belak Ripyun" carpet. (Tr. at 309 [Braunstein]). Thus, the plaintiffs failed to present sufficient credible evidence at trial to demonstrate that the defendants displayed or sold an exact copy of the "Belak Ripyun" carpet.

32. It is undisputed, however, that the defendants displayed a picture of their "Elk's Foot" carpet at the 1997 carpet show in Atlanta. (PX 24; Tr. at 336 [Costikyan]). At trial, the defendants asserted that they were not soliciting orders for the carpet, but were only trying to gauge customer reaction to the design. (Tr. at 245 [Braunstein]). However, the defendants' testimony that they displayed this carpet design without any intention of selling it was not credible.

33. The "Elk's Foot" carpet design has many similarities to the "Belak Ripyun" carpet. Both have animal foot motifs. Moreover, while the motifs are slightly different, the overall look and triangular shape of the motifs is the same. In each carpet, the motifs are arranged to radiate out from the center and the arrangement of the motifs on the two carpets appears to be identical. (PX 4, 24). This was the precise arrangement of the motifs that Odegard testified was the subject of considerable creative effort on her part. (Tr. at 89–90 [Odegard]).

34. The main difference between the picture of the "Elk's Foot" design the defendants displayed at the Atlanta show and the plaintiffs' "Belak Ripyun" carpet is that the "Belak Ripyun" carpet has a border not found on the picture of the "Elk's Foot" design. However, the picture of the "Elk's Foot" was clearly cropped, because the writing on the back trails off the picture in mid-sentence. (PX 4, 24). The defendants had no explanation for this obvious tampering with the picture. This alteration was apparently done to eliminate a border that was depicted on this picture when it was shown in Atlanta. Given the defendants' efforts to

**1334**

hide the existence of this border, I can only conclude that it greatly resembled the border of the plaintiffs' "Belak Ripyun" carpet.

35. The defendants were unable to demonstrate at trial that the "Elk's Foot" design was independently created. Costikyan testified that the design was created by David Setlow, a designer who worked for Stark Carpets in New York. However, Costikyan could provide no information on how Setlow designed the "Elk's Foot." Moreover, the defendants failed to call Setlow as a witness. (Tr. at 339–40 [Costikyan]).

36. The defendants had access to the "Belak Ripyun" carpet design. Braunstein and Costikyan attended the July 1996 Atlanta carpet show at which the plaintiffs exhibited the "Belak Ripyun" carpet. (Tr. at 98 [Odegard]; Tr. at 228 [Costikyan]; Tr. at 241 [Braunstein]). The plaintiffs have also advertised the "Belak Ripyun" in magazines, including Architectural Digest. (PX 8; Tr. at 97–98 [Odegard]).

## CONCLUSIONS OF LAW

1. The plaintiffs' claims arise under the Copyright Act of 1976, as amended, 17 U.S.C. § 101 *et seq.* This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

2. "To establish copyright infringement, 'two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Williams v. Crichton,* 84 F.3d 581, 587 (2d Cir.1996) (citing *Feist Publications, Inc. v. Rural Telephone Service Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 1295–96, 113 L.Ed.2d 358 (1991)); *see also ABKCO Music, Inc. v. Stellar Records, Inc.,* 96 F.3d 60, 64 (2d Cir.1996). " 'A certificate of copyright registration is prima facie evidence that the copyright is valid' ... [and] 'creates a rebuttable presumption that the work in question is copyrightable.'" *Fonar Corp. v. Domenick,* 105 F.3d 99, 104 (2d Cir.1997) (citing 17 U.S.C. § 410(c) and *Whimsicality, Inc. v. Rubie's Costume Co.,* 891 F.2d 452, 455 (2d Cir.1989)); *see also Folio Impressions, Inc. v. Byer California,* 937 F.2d 759, 763 (2d Cir.1991).

*VALIDITY OF THE COPYRIGHTS*

3. Odegard, Inc. is the owner of a copyright to its "Chaklo" carpet design pursuant to a Certificate of Registration issued effective as of May 24, 1995 by the United States Copyright Office. (PX 9). Odegard is the owner of a copyright to the "Belak Ripyun" carpet design pursuant to Certificate of Registration issued effective as of May 24, 1995 by the United States Copyright Office. (PX 3).

4. These Certificates of Registrations provide the plaintiffs with a rebuttable presumption of ownership of valid copyrights. In regard to the plaintiffs' "Chaklo" and "Belak Ripyun" carpets, the defendants have not attempted to overcome this presumption, and have not argued that the plaintiffs do not own valid copyrights in these works. Therefore, with respect to the "Chaklo" and "Belak Ripyun" carpets, the plaintiffs have demonstrated their ownership of valid copyrights.

5. Prior to trial, Odegard, Inc. filed an application for a Certificate of Registration for its "Asterisk" carpet design with the United States Copyright Office. (PX 16; Tr. at 169, 186). On March 14, 1997, after the completion of trial, the United States Copyright Office issued a Certificate of Registration for the "Asterisk" carpet design. (PX 46). That registration states that the complete application was received on January 31, 1997. (PX 46).

6. "The effective date of a copyright registration is the day on which an application, deposit, and fee, which are later determined by the Registrar of Copyrights ... to be acceptable for registration have all been received in the Copyright Office." 17 U.S.C. § 410(d). Therefore, Odegard, Inc.'s registration became effective on January 31, 1997, which was before the filing of this action. Because Odegard, Inc.'s Certificate of Registration was effective when this action was filed, the plaintiffs are presumed to have a valid copyright in their "Asterisk" carpet design. *See* 2 Melville M. Nimmer & David Nimmer, *Nimmer on Copyright* § 7.16[D].

7. At trial, the defendants presented evidence in an attempt to rebut the presumption that the plaintiffs own a valid copyright to

their "Asterisk" carpet design. "Generally speaking, the presumption of validity may be rebutted '[w]here other evidence in the record casts doubt on the question.'" *Fonar*, 105 F.3d at 104 (citing *Durham Industries, Inc., v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir.1980)). This presumption can be overcome by a showing that the work was not sufficiently original to be copyrightable. *See Fonar*, 105 F.3d at 104.

8. At trial, the defendants argued that the plaintiffs' "Asterisk" design was not original but was copied from other designs in the public domain and therefore is not entitled to copyright protection. The defendants also argued that the plaintiffs failed to disclose that the "Asterisk" design was "derivative," and that this omission renders the plaintiffs' copyright defective.

9. "In the copyright context, originality means that the work was independently created by its author, and not copied from someone else's work. The level of originality and creativity that must be shown is minimal, only an unmistakable dash of originality need by demonstrated, high standards of uniqueness in creativity are dispensed with." *Folio*, 937 F.2d at 764–65 (internal citations and quotations omitted); *see also Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir.), *cert. denied*, 506 U.S. 934, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992). This requirement of originality has been described as "little more than a prohibition of actual copying." *Gaste v. Kaiserman*, 863 F.2d 1061, 1066 (2d Cir. 1988) (citing *Alfred Bell & Co. v. Catalda Fine Arts, Inc.* 191 F.2d 99, 103 (2d Cir. 1951)).

10. In determining whether a fabric design is sufficiently original to be copyrightable, the Court of Appeals for the Second Circuit has stated that "a work may be copyrightable even though it is entirely a compilation of unprotectible elements." *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1003–04 (2d Cir.1995) (citing *Feist*, 499 U.S. at 340, 111 S.Ct. at 1284–85). Even if the motifs themselves are not copyrightable, the designer of a fabric may copyright its selection and arrangement of motifs, or its combining of motifs. *See Knitwaves*, 71 F.3d at 1004; *Folio*, 937 F.2d at 765.

11. The "Asterisk" carpet's freeform, eight-pointed motifs are original. While the evidence at trial showed that eight-pointed figures are commonly used in fabric design, the plaintiff's less rigid and non-geometric figures are distinct from traditional eight-pointed figures. Thus, these figures have the required "unmistakable dash of creativity." Moreover, the plaintiffs' arrangement of these motifs, and their use in this particular design scheme of small motifs, arranged so as to leave considerable negative space, would be sufficiently original to be copyrightable.

12. Based on the plaintiffs' Certificate of Registration for their "Asterisk" carpet, this design is presumed to be original. The defendants have failed to present evidence sufficient to rebut this presumption. Moreover, this Court has independently determined that the plaintiffs' "Asterisk" carpet is sufficiently original to be copyrightable.

13. The defendants also attempt to rebut the presumption of validity by arguing that the plaintiffs failed to disclose that their "Asterisk" design is "derivative." "A work is not derivative unless it has substantially copied from a prior work ... [A] work will be considered a derivative work only if it would be considered an infringing work if the material that it has derived from a pre-existing work had been taken without the consent of a copyright proprietor of such pre-existing work. It is saved from being an infringing work only because the borrowed or copied material was taken with the consent of the copyright owner of the prior work or because the prior work has entered the public domain." *M.H. Segan Limited Partnership v. Hasbro, Inc.*, 924 F.Supp. 512, 519 (S.D.N.Y. 1996) (citing 1 *Nimmer on Copyright* § 3.01).

14. The defendants have failed to specify a particular work that they believe the "Asterisk" carpet infringes upon. Instead, the defendants assert that the "Asterisk" carpet was copied from the public domain. However, this is merely a recasting of the argument that the "Asterisk" carpet is not original. This argument is unconvincing, as explained above, and is insufficient to rebut the presumption of validity the plaintiffs are afford-

ed by virtue of the Certificate of Registration they received for their "Asterisk" carpet. To the extent that the defendants are arguing that the plaintiffs copied the "Asterisk" carpet design from Japanese textiles, they misunderstood the testimony of the carpet's designers. All that that testimony establishes is that the plaintiffs' designers obtained inspiration from such textiles. The "Asterisk" design was not copied from the designs in those textiles.

15. Thus, because the defendants have failed to demonstrate that the "Asterisk" carpet is not original or that it is a derivative work, the plaintiffs own a valid copyright to their "Asterisk" carpet design. Therefore, the defendants counterclaim seeking a declaration that the plaintiffs' copyright to the "Asterisk" carpet design is invalid is dismissed.

### INFRINGING COPYING

16. To prove the second element of a copyright claim, infringing copying, the plaintiffs must demonstrate both that the defendants have actually copied their works, and that such copying was illegal because a "substantial similarity" exists between the defendants' carpets and the protectable elements of the plaintiffs' carpets. *See Knitwaves,* 71 F.3d at 1002; *Fisher–Price, Inc. v. Well–Made Toy Manufacturing Corp.,* 25 F.3d 119, 123 (2d Cir.1994).

### ACTUAL COPYING

17. A plaintiff may show "actual copying" by direct evidence. *See Fisher–Price,* 25 F.3d at 123. "In the absence of direct evidence, copying is proven by showing (a) that the defendant had access to the copyrighted work and (b) the substantial similarity of protectible material in the two works." *Williams,* 84 F.3d at 587 (internal quotations and citations omitted). The demonstration of copying by circumstantial evidence can be rebutted, and a claim of copyright infringement defeated, if the defendant can show that its work was independently created. *See Folio,* 937 F.2d at 765; *Tienshan, Inc. v. C.C.A. International (N.J.), Inc.,* 895 F.Supp. 651, 657 (S.D.N.Y.1995).

■ 18. At trial, the plaintiffs presented direct evidence that the defendants actually copied elements of the "Chaklo" carpet in designing their "Swirl" carpet. Braunstein told DeMarco that he had obtained the idea for the "Swirl" carpet from a home design magazine and the plaintiffs entered into evidence a magazine advertisement that displayed a portion of the plaintiffs' "Chaklo" carpet. (Tr. at 195 [Demarco] ). As explained above, comparison of this advertisement to the defendants' "Swirl" carpet, in combination with DeMarco's testimony, provides sufficient direct evidence that the defendants actually copied elements of the plaintiffs' "Chaklo" carpet in creating their "Swirl" carpet.

■ 19. For all three of their allegedly infringed upon carpets, the plaintiffs also sought to demonstrate "actual copying" through circumstantial evidence. The plaintiffs presented evidence to show that the defendants had access to all three of the carpet designs at issue in this case. The plaintiffs also argued that there was a substantial similarity between their carpets and the defendants' allegedly infringing carpets.

20. "Access may be inferred when the defendant had a reasonable opportunity to view the plaintiffs' work before creating its own." *Judith Ripka Designs, Ltd. v. Preville,* 935 F.Supp. 237, 246 (S.D.N.Y.1996) (citing *Gaste,* 863 F.2d at 1066–67); *see also* 3 *Nimmer on Copyright* at § 13.02[A]. Access can also be inferred when a plaintiffs' works have been widely disseminated. *See ABKCO Music, Inc. v. Harrisongs Music, Ltd.,* 722 F.2d 988, 998 (2d Cir.1983); *see also* 3 *Nimmer on Copyright* at § 13.02[A].

21. The plaintiffs have demonstrated that the defendants had access to their "Asterisk" carpet design. The "Asterisk" carpet is displayed in the Holly Hunt showroom, which is located next door to the showroom of a designer that Braunstein visited. Moreover, the "Asterisk" carpet was displayed at a July 1996 carpet show in Atlanta that both Costikyan and Braunstein attended. Thus, the plaintiffs' have demonstrated access based both on the wide dissemination of the "Asterisk" carpet and the many opportunities the defendants had to view that carpet.

22. The plaintiffs have also demonstrated that the defendants had access to their "Chaklo" carpet. The "Chaklo" carpet design has been featured in a number of magazine advertisements. As stated above, access can be inferred when a plaintiffs' works have been widely disseminated. Moreover, Braunstein told DeMarco that he had obtained the idea for the "Swirl" carpet from a home design magazine. Thus, the plaintiffs have also demonstrated access by showing that Braunstein had examined the types of magazines in which advertisements featuring the "Chaklo" carpet design were printed.

23. The plaintiffs have also demonstrated that the defendants had access to the "Belak Ripyun" carpet design. Braunstein and Costikyan attended the July 1996 Atlanta carpet show at which the plaintiffs exhibited the "Belak Ripyun" carpet. The plaintiffs have also advertised the "Belak Ripyun" in magazines, including Architectural Digest. Thus, the plaintiffs have demonstrated access based both on the wide dissemination of the "Belak Ripyun" carpet and the many opportunities the defendants had to view that carpet.

24. In addition to showing access, to prove actual copying by circumstantial evidence, the plaintiffs must show a substantial similarity between each of their carpets and the defendants' allegedly infringing carpets. "In the context of deciding whether the defendant copied at all (as distinguished from whether it illegally copied), 'similarity' relates to the entire work, not just the protectible elements." *Fisher–Price*, 25 F.3d at 123.

25. "Substantial similarity" for the purposes of proving "actual copying" through circumstantial evidence is different from "substantial similarity" for the purposes of showing illegal copying. *See Laureyssens v. Idea Group, Inc.* 964 F.2d 131, 139–40 (2d Cir.1992); *Tienshan*, 895 F.Supp. at 656. Thus, courts have referred to "substantial similarity," in the context of determining "actual copying" as "probative similarity" to distinguish it from the demonstration of "substantial similarity" needed to prove illegal copying. *See Fisher–Price*, 25 F.3d at 123; *Laureyssens*, 964 F.2d at 140; *Tienshan*, 895 F.Supp. at 656; *see also* 3 *Nimmer on Copy-right* 13.03[A]. "Probative similarity" is a less demanding test than "substantial similarity," requiring only that there are similarities between the two works that would not be expected to arise if the works had been created independently. *See Laureyssens*, 964 F.2d at 140; *Tienshan*, 895 F.Supp. at 656; *see also* 3 *Nimmer on Copyright* 13.03[A].

26. Both the "Asterisk" and "Star" carpets have freeform, rather than rigidly geometric or precise eight-pointed figures. Both carpets have considerable negative space and have been produced in identical color schemes. These similarities are too great to be reasonably expected to have arisen independently in the two works. Therefore, the "Asterisk" and "Star" carpets are probatively similar. Having proven both access and probative similarity, the plaintiffs have proven, through circumstantial evidence, that the defendants actually copied their "Asterisk" carpet.

27. The "Chaklo" and "Swirl" carpets include common shapes resembling "hearts," "S's," and swirls and are rendered in the same color scheme. These similarities are too great to be reasonably expected to have arisen independently in the two works. Therefore, the "Chaklo" and "Swirl" carpets are probatively similar. The plaintiffs have proven, through circumstantial evidence, that the defendants actually copied their "Chaklo" carpet.

28. The "Belak Ripyun" and "Elk's Foot" carpets both have small triangle animal foot motifs that radiate out from the center of the carpet. The "Belak Ripyun" carpet has a border that contains triangular shapes intended to resemble mountain tops. While the picture of "Elk's Foot" presented at trial had no border, that border was apparently deliberately excised. These similarities are too great to be reasonably expected to have arisen independently in the two works. Therefore, the "Belak Ripyun" and "Elk's Foot" carpets are probatively similar. The plaintiffs have proven, through circumstantial evidence, that the defendants actually copied their "Belak Ripyun" carpet.

29. The defendants have failed to rebut the plaintiffs' showing of "actual copying" by

proving that any of their carpets were independently created. For each carpet, the defendants were unable to describe credibly their design process. In regard to their "Star" and "Swirl" carpets, the defendants were also unable to explain how, without actually copying the plaintiffs' carpets, early proto-types were transformed into final products that much more closely resembled the plaintiffs' carpets.

### SUBSTANTIAL SIMILARITY

30. For each of the allegedly infringed upon carpet designs, the plaintiffs have demonstrated that the defendants engaged in actual copying. However, to succeed on their claims of copyright infringement, they must also show that the copying was illegal because "[p]arrotry does not always mean piracy." *Fisher–Price*, 25 F.3d at 123. Copying is illegal only when there is a "substantial similarity between the defendants' work and the protectible elements of [the plaintiffs' works]." *Knitwaves*, 71 F.3d at 1002 (quoting *Fisher–Price*, 25 F.3d at 122–23).

31. In determining the protectable elements of the plaintiffs' works, " 'a copyright does not protect an idea, but only the expression of an idea' " *Williams*, 84 F.3d at 587 (citing *Kregos v. Associated Press*, 3 F.3d 656, 663 (2d Cir.1993), *cert. denied*, 510 U.S. 1112, 114 S.Ct. 1056, 127 L.Ed.2d 376 (1994)). "That is, the plaintiff must show that the defendant appropriated the plaintiff's particular means of expressing an idea, not merely that he expressed the same idea." *Fisher–Price*, 25 F.3d at 123.

32. The test for "substantial similarity" is the "ordinary observer test." *See Knitwaves*, 71 F.3d at 1002; *Fisher–Price*, 25 F.3d at 123. The ordinary observer test asks "whether the ordinary observer, unless he set out to detect the disparities [between the two works], would be disposed to overlook them, and regard their aesthetic appeal as the same." *Folio*, 937 F.2d at 765 (internal quotations and citation omitted); *see also Knitwaves*, 71 F.3d at 1002. "[D]issimilarity between some aspects of the works will not automatically relieve the infringer of liability, for 'no copier may defend the act of plagiarism by pointing out how much of the copy

he has not pirated.' " *Williams*, 84 F.3d at 588 (quoting *Rogers*, 960 F.2d at 308). "It is only when the similarities between the protected elements of [the plaintiffs' works] and the allegedly infringing work are of 'small import quantitatively or qualitatively' that the defendant will be found innocent of infringement." *Williams*, 84 F.3d at 588 (quoting *Rogers*, 960 F.2d at 308).

33. When a work contains both protectable and unprotectable elements, the inspection must be more discerning. *See Knitwaves*, 71 F.3d at 1002. The court "must attempt to extract the unprotectible elements from [its] consideration and ask whether the protectible elements, standing alone, are substantially similar." *Knitwaves*, 71 F.3d at 1002; *see also Fisher–Price*, 25 F.3d at 123. This more discerning test does not change the degree of similarity required, only what elements of the works are being compared. *See Knitwaves*, 71 F.3d at 1002–03; *see also Fisher–Price*, 25 F.3d at 123 ("Where as here, we compare products that have both protectible and unprotectible elements, we must exclude comparison of the unprotectible elements from our application of the ordinary observer test").

34. The defendants' "Star" carpet is substantially similar to the protectable elements of the plaintiffs' "Asterisk" carpet. The "Asterisk" motifs, their arrangement, and the choice of color schemes are protectable elements. As explained above, the "Asterisk" and "Star" carpets have the same motifs, laid out in the same arrangement, and rendered in very similar colors.

35. In this case, the question of substantial similarity is clear. The total look of the carpets is identical, and the ordinary observer would be hard pressed to find differences between the two designs. The only difference is in the size of the borders. But, such a minor difference would not prevent the ordinary observer from regarding the aesthetic appeal as the same, given that the carpets are identical or virtually identical in every other detail. *See Folio*, 937 F.2d at 765; *see also Knitwaves*, 71 F.3d at 1002. An ordinary observer would find the carpets substantially similar. Thus, the plaintiffs

have demonstrated illegal copying, and have satisfied all of the other elements of a claim for copyright infringement for the "Asterisk" design.

36. The defendants' "Elk's Foot" design is substantially similar to the protectable elements of the plaintiffs' "Belak Ripyun" carpet design. The motifs, their arrangement and their rendering in a particular color scheme are protectable elements of the "Belak Ripyun" carpet design.

37. Both carpet designs have small triangular animal foot patterns that emanate out from the center in an identical fashion and had similar borders.

38. The difference in the actual animal foot used in the motif is insufficient to defeat a finding of substantial similarity. The defendants may not avoid liability for infringing by pointing out minor differences between the designs. *See Williams,* 84 F.3d at 588. Even with these differences, the ordinary observer would find that the aesthetic appeal of the two carpets was substantially similar. *See Folio,* 937 F.2d at 765; *see also Knitwaves,* 71 F.3d at 1002. The most striking feature of both carpets is the small triangular motifs radiating out from the center in an identical arrangement. The arrangement of the motifs is copyrightable and has been copied to a degree that the aesthetic feel of the two designs is the same. The exact form of the motifs themselves is less important. Therefore, the plaintiffs have demonstrated illegal copying and have satisfied all of the other elements for a claim of copyright infringement.

39. Unlike the "Asterisk" and "Belak Ripyun" carpets, many of the motifs in the "Chaklo" carpet design are not protectable elements. "Heart" and "S" shaped motifs are too common to be in themselves protectable, although the individualized expression of these elements on the "Chaklo" carpet and the selection and arrangement of these elements is protectable. *See Knitwaves,* 71 F.3d at 1004.

40. An ordinary observer would not regard the "Swirl" carpet design as substantially similar to the "Chaklo" carpet design. The selection and arrangement of the motifs

in the two carpets designs are substantially different. The overall pattern and concept of the "Chaklo" carpet is of a completely symmetrical carpet based on wrought iron grillwork. The pattern can be divided into quarters with each quarter emanating in exactly the same way from the center of the carpet. The border has its own design.

41. In contrast, the "Swirl" carpet design is not symmetrical. The pattern is dominated by several flowering shapes that resemble the swirls found on snail shells. These motifs are not placed in any symmetric way in the pattern. The motifs on the "Swirl" pattern are consistently larger than those in the "Chaklo" carpet design, and some of the motifs run off of the edge of the carpet. The "Swirl" carpet has no border, further dispelling any feeling of symmetry.

42. While both carpet designs contain motifs based on commonly used design elements, the expressions of these elements are not the same. For example, the motifs found in the "Swirl" pattern based on an "S" are not centered and are larger than any of the "S" motifs found in the "Chaklo" carpet. Moreover, the "S" motifs are arranged differently on the two carpets.

43. Based on these differences, and the overall different aesthetic appeals of the two carpets, the ordinary observer would not view the "Chaklo" and "Swirl" carpet designs as substantially similar. Therefore, while the plaintiffs have proven their claims for infringement of their "Asterisk" and "Belak Ripyun" carpet designs, that have not shown that the defendants infringed upon their "Chaklo" carpet design.

*DAMAGES*

44. As infringers of the plaintiffs' works, the defendants are liable for either 1) the plaintiffs' actual damages and any additional profits of the defendants attributable to the infringements; or, at the plaintiffs' election prior to judgment, 2) an award of statutory damages with respect to those works that have been registered under the Copyright Act. 17 U.S.C. § 504; *see also Twin Peaks Productions, Inc. v. Publications International, Ltd.,* 996 F.2d 1366, 1380 (2d Cir. 1993); *Rogers,* 960 F.2d at 312; *Itar–Tass*

*Russian News Agency v. Russian Kurier, Inc.,* 1997 WL 109481 *12 (S.D.N.Y.1997). The plaintiffs seek actual damages for the infringement of their "Asterisk" carpet design, but have elected to receive statutory damages for the defendants' infringement of their "Belak Ripyun" carpet design. (Tr. at 377).

### ACTUAL DAMAGES AND PROFITS

45. The plaintiffs seek damages based on the defendants' profits from selling their "Star" carpet. In determining an award of damages based on the defendants' profits, the plaintiffs bear the burden of proving the defendants' gross revenues. See 17 U.S.C. § 504(b); *see also In Design v. K–Mart Apparel Corp.,* 13 F.3d 559, 563–64 (2d Cir. 1994); *Itar–Tass,* 1997 WL 109481 at *12. The defendants then have the opportunity to demonstrate deductible expenses. See 17 U.S.C. § 504(b); *see also In Design,* 13 F.3d at 564; *Itar–Tass,* 1997 WL 109481 at *12. "Any doubts resulting from an infringer's failure to present adequate proof of its costs are resolved in favor of the copyright holder." *In Design,* 13 F.3d at 564 (citing *Gaste,* 863 F.2d at 1070–71;) *see also In Design v. Lauren Knitwear Corp.,* 782 F.Supp. 824, 832 (S.D.N.Y.1991); *Itar–Tass,* 1997 WL 109481 at *12.

46. The plaintiffs have submitted delivery invoices that demonstrate that the defendants received $25,853.25 in gross revenue from the sale of their "Star" carpet. (PX 35). At trial, Braunstein and Costikyan both testified that the defendants had incurred costs in developing the "Star" carpet. (Tr. at 308 [Braunstein]; Tr. at 355 [Costikyan]). According to Braunstein and Costikyan, the defendants incurred costs by traveling to Nepal, renting exhibition space at carpet shows, and marketing the carpet. (Tr. at 308–10 [Braunstein]; Tr. at 355 [Costikyan]). However, the defendants failed to submit any documentation for these expenses. Moreover, the testimony indicated that substantial portions of these expenses were incurred in connection with designing, marketing and selling a number of the defendants' carpet designs, not just the "Star" carpet. Therefore, the defendants have failed to prove deductions for their expenses.

47. The defendants did testify that there were direct manufacturing and shipping costs for the "Star" carpet in an amount of approximately seventy-five percent of the sales price. (Tr. at 311 [Braunstein]). This testimony was clear and unrefuted. It is also plain that the carpets could not have been produced without such costs. Given the plaintiffs' demonstration of the defendants' gross revenues and the defendants' proof of expenses, totalling 75% of the $25,853.25 of sales of the "Star" carpet, the plaintiffs have shown that they are entitled to an award of $6,463.31 based on the defendants' profits.

48. The plaintiffs also seek to recover damages for lost sales. The plaintiffs assert that the defendants took $400,000 worth of orders for the "Star" carpet, orders that were never filled, and that this figure represents sales of their "Asterisk" carpet they lost because of the defendants' infringement. When seeking an award of damages for lost sales, the burden is on the plaintiff to demonstrate that it would have made the sales but for the infringing activity. *See Banff Ltd. v. Express, Inc.* 921 F.Supp. 1065, 1068 (S.D.N.Y.1995) (citing *Stevens Linen Associates, Inc. v. Mastercraft Corp.,* 656 F.2d 11, 15 (2d Cir.1981)); *see also 3 Nimmer on Copyright* at § 14.02[A].

49. The plaintiffs have failed to present any evidence, beyond their mere assertion, that they would have made the sales for which the defendants took orders. Moreover, the defendants have shown persuasively that the plaintiffs would not have made these sales. For example, all of Odegard's previous sales of "Asterisk" carpets, beginning in 1995, did not exceed $30,000. (DX SS; Tr. at 134–36 [Odegard]). Moreover, Odegard sells to both designers and wholesalers, and thus competes with the very wholesalers to whom it sells its "Asterisk" carpet. (Tr. at 190, 208 [DeMarco]). In contrast, the defendants only sold the "Star" carpet to wholesalers. (Tr. at 352 [Costikyan]). Sales to wholesalers are made at a substantially lower price than sales to designers. It is not credible that, having sold no more than $30,000 worth of "Asterisk" carpets in two years, the plaintiffs would

have sold $400,000 worth of such carpets in a short period of time if only the defendants had not started selling the "Star" carpet.

50. The plaintiffs' allegations that they suffered lost sales are too speculative to warrant an additional award of actual damages. *See* 3 *Nimmer on Copyright* § 14.02[A] ("In the absence of convincing evidence as to the volume of sales that plaintiff would have obtained but for the infringement, the measure of lost profits may be rejected as too speculative"). Thus, the plaintiffs are entitled to a total award of $6,463.31 for the defendants' infringement of their "Asterisk" carpet.

STATUTORY DAMAGES

51. The plaintiffs are also entitled to an award of statutory damages for the defendants' infringement of their "Belak Ripyun" carpet. Unless the violation is willful, statutory damages are awarded in an amount of not less then $500 or more than $20,000 for infringement of a work. 17 U.S.C. § 504(c)(1); *see also D.C. Comics, Inc. v. Mini Gift Shop,* 912 F.2d 29, 34 (2d Cir. 1990); *Itar–Tass,* 1997 WL 109481 at *15. Where the infringement was willful, the award may be increased to not more than $100,000. 17 U.S.C. § 504(c)(2); *see also Itar–Tass,* 1997 WL 109481 at *15.

52. "Relevant factors in determining the amount of statutory damages include the expenses saved and profits reaped by the defendants in connection with the infringements, the revenues lost by the plaintiffs as a result of the defendant's conduct and the infringers' state of mind." *Broadcast Music, Inc. v. R Bar of Manhattan, Inc.,* 919 F.Supp. 656, 659–60 (S.D.N.Y.1996); *see also Fitzgerald Publishing Co., Inc. v. Baylor Publishing Co., Inc.,* 807 F.2d 1110, 1117 (2d Cir.1986); *Itar–Tass,* 1997 WL 109481 at *15. Moreover, "the potential for discouraging the defendant is factored into the determination of the award." *Fitzgerald Publishing,* 807 F.2d at 1117 (citing *F.W. Woolworth Co. v. Contemporary Arts, Inc.* 344 U.S. 228, 233, 73 S.Ct. 222, 225, 97 L.Ed. 276 (1952)); *see also Itar–Tass,* 1997 WL 109481 at *15.

53. "[A] defendant's knowledge that its actions constitute an infringement establishes that the defendant acted willfully within the meaning of § 504(c)(2) for purposes of enhancing statutory damages." *Fitzgerald,* 807 F.2d at 1115; *see also N.A.S. Import, Corp. v. Chenson Enterprises, Inc.,* 968 F.2d 250, 252 (2d Cir.1992). Knowledge of infringement can be constructive rather than actual, and can be inferred from the infringer's conduct. *See Knitwaves,* 71 F.3d at 1010; *N.A.S. Import,* 968 F.2d at 252. Moreover, reckless disregard of the copyright holder's rights is sufficient to support an award of enhanced damages. *See Knitwaves,* 71 F.3d at 1010.

54. The defendants acted willfully in infringing upon the plaintiffs' "Belak Ripyun" carpet. That the defendants cut off the border on the picture of their "Elk's Foot" design demonstrates that the defendants were aware that they were infringing on the plaintiffs' designs and were willing to act dishonestly to hide their infringement from the plaintiffs and this Court. The defendants also presented testimony about the independent creation of their "Elk's Foot" carpet that was not credible and was developed to hide their infringement. The defendants knowledge that they were infringing is clear from this conduct, making an enhancement of damages appropriate.

55. The plaintiffs have not demonstrated that they lost profits or that the defendants benefited financially from their infringement of the plaintiffs, "Belak Ripyun" carpet. However, as explained above, the defendants clearly intended to infringe upon the plaintiffs' "Belak Ripyun" carpet, and went to great lengths to hide their infringement from this Court. Therefore, based on the egregiousness of the defendants' behavior, an award of $25,000 in statutory damages is appropriate in this case. Such an award also provides proper deterrence.

*Other Relief*

56. The plaintiffs are also entitled to a permanent injunction against the defendants enjoining them from displaying or selling carpets that could be confused with the plaintiffs' "Asterisk" or "Belak Ripyun" carpet designs. The plaintiffs should submit a proposed judgment with notice to the defen-

dants within seven days of the date of this opinion. The defendants may submit objections to the plaintiffs' proposed judgment and counter-proposals five days thereafter.

57. The plaintiffs may submit a separate application for attorneys' fees pursuant to Federal Rule of Civil Procedure 54(d). This application should take into account that only one of the two carpet designs upon which the defendants infringed were registered at the time of the infringement. *See Knitwaves,* 71 F.3d at 1011, 3 *Nimmer on Copyright* § 14.04[D]. In ruling on such an application this Court would be guided by the factors set forth in *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 533–34, 114 S.Ct. 1023, 1033, 127 L.Ed.2d 455 (1994).

### CONCLUSION

The defendants counterclaim that the plaintiffs' copyright registration for their "Asterisk" carpet design is invalid is dismissed. The defendants have infringed upon the plaintiffs' copyrights to its "Asterisk" and "Belak Ripyun" carpet designs. The defendants have not infringed upon the plaintiffs' "Chaklo" carpet design. The plaintiffs are entitled to an award of $6,463.31 in actual damages for the defendants' infringement of their "Asterisk" carpet design. The plaintiffs are entitled to an award of $25,000.00 in statutory damages for the defendants' infringement of their "Belak Ripyun" carpet design.

The plaintiffs are also entitled to a permanent injunction against the defendants enjoining them from displaying or selling carpets that could be confused with the plaintiffs' "Asterisk" or "Belak Ripyun" carpet designs. The plaintiffs should submit a proposed judgment with notice to the defendants within seven days of the date of this opinion. The defendants may submit objections to the plaintiffs' proposed judgment and counter-proposals 5 days thereafter. The plaintiffs may submit a separate application for attorneys' fees pursuant to Federal Rule of Civil Procedure 54(d).

**SO ORDERED.**